Gerry Teal ("the worker") sued Dairyman's Supply Company, Inc. ("the company"), seeking workers' compensation benefits. The trial court awarded benefits based upon its finding that the worker had suffered two on-the-job injuries resulting in a 30% permanent partial disability. In the same action, the worker also sued a third-party defendant, alleging a tort claim. The company moved to "sever [the third-party claim], for the purposes of trial." The circuit court granted the company's motion to sever "for trial purposes only," and directed that the workers' compensation claim be tried first in a bench trial and that the third-party claim then be tried to a jury. The company appealed to this court from the circuit court's award of workers' compensation benefits.
Considering the substance rather than the form of the motion entitled a "motion to sever," and the trial court's relief granted on that motion, we concluded that the trial court actually had ordered separate trials in this case pursuant to Rule 42(b), Ala.R.Civ.P., rather than a severance of claims pursuant to Rule 21, Ala.R.Civ.P. See Key v. Robert M. DukeIns. Agency, 340 So.2d 781 (Ala. 1976); Walker County Petroleum Council,Inc. v. Walker County, 368 So.2d 862 (Ala. 1979); Seybold v. MagnoliaLand Co., 372 So.2d 865 (Ala. 1979); and Interstate Truck Leasing, Inc.v. Bender, 608 So.2d 716 (Ala. 1992) (overruled on other grounds, StateFarm Fire Cas. Co. v. Owen, 729 So.2d 834 (Ala. 1998)). The pendency of the third-party claim meant that the circuit court's order declaring the worker to be 30% permanently and partially disabled was not a final judgment. Accordingly, this court, on March 20, 2003, reinvested the circuit court with jurisdiction for 14 days for the purpose of entering a final judgment pursuant to Rule 54(b), Ala.R.Civ.P. On March 31, 2003, *Page 1111 
the circuit court entered an order certifying the judgment as final pursuant to Rule 54(b).
While employed as a truck driver with the company, the worker was injured in four work-related accidents. On March 4, 1998, and January 28, 1999, the worker injured his lower back. On June 21, 1999, the worker again injured his lower back when a strap broke while he was tightening a load on a truck. He suffered herniated discs at the L-4 and L5-S1 levels.
On February 7, 2000, the worker reached maximum medical improvement, was assigned a 5% physical-impairment rating, and was released to return to work with certain restrictions. Following his return to work, the worker had another on-the-job accident on August 1, 2000, when 2000 pounds of metal roofing fell on him. He suffered a herniation or rupture of the cervical discs at the C-3-4 level, as well as injuries to his chest and sternum. After a period of recuperation, the worker returned to work at a wage greater than his pre-injury wage.
At trial, the parties stipulated that the only issue was the extent of the worker's physical impairment as a result of his on-the-job accidents. Following a hearing, the trial court determined that the worker had sustained a 30% permanent partial disability as a result of the June 21, 1999, injury to his back, and that he had also sustained a 30% permanent partial disability as a result of the August 1, 2000, injury to his neck and sternum. The court awarded benefits accordingly.
A judgment rendered by the trial court on April 15, 2002, states the following, among other things, in the section labeled "Findings of Fact":
 "3. The parties stipulated that the only issue for the Court to determine was the extent of [the worker's] physical impairment as a result of the aforementioned accidents and injuries.
 "4. [The worker] is 43 years of age and has a 12th grade education. He finished two years of college and has worked the great majority of his adult life in manual labor-type work, which included working as a paramedic and driving tractor trailers for various companies, including [the company]."
The company filed a postjudgment motion, arguing that paragraph 4 indicates that, in making its disability determination, the trial court impermissibly considered the worker's age, education, training, and experience — factors that, it claims, are relevant to vocational impairment but not to physical impairment — thereby violating § 25-5-57(a)(3)i., Ala. Code 1975. That subsection states, in pertinent part:
 "If, on or after the date of maximum medical improvement, except for scheduled injuries as provided in Section 25-5-57(a)(3), an injured worker returns to work at a wage equal to or greater than the worker's pre-injury wage, the worker's permanent partial disability rating shall be equal to his or her physical impairment and the court shall not consider any evidence of vocational disability."
On May 24, 2002, the trial court denied the company's post-judgment motion, stating:
 "The award, pursuant to Law of Alabama, is for [the worker's] permanent physical impairments only and the Court did not consider any evidence of vocational disability of [the worker] in entering the Court's Final Judgment in this [Workers'] Compensation case."
The company appealed. On October 1, 2002, this court reinvested the trial court with jurisdiction for 21 days for the purpose of entering a final judgment pursuant to Rule 54(b), Ala.R.Civ.P., with respect to its calculation of benefits. On October 16, the trial court entered an amended judgment that omitted the paragraph 4 *Page 1112 
quoted above and substituted the following:
 "8. The parties stipulated the Court is not to consider [the worker's] vocational disability and the Court has not considered any facts revealed by the evidence with respect to any vocational loss that [the worker] may have."
The company raises two issues on appeal: whether in reaching its determination the trial court improperly considered evidence of vocational loss and whether the 30% permanent partial disability determination was against the great weight of the evidence.
In support of its argument that the trial court erred in determining the worker's permanent partial disability rating by considering vocational loss, the company cites Wal-Mart Stores, Inc. v. Reynolds,794 So.2d 1193 (Ala.Civ.App. 2001) ("Reynolds _"), and Wal-Mart Stores,Inc. v. Reynolds, [Ms. 2010211, July 19, 2002] ___ So.2d ___ (Ala.Civ.App. 2002) ("Reynolds II"). In Reynolds I, this court reversed a judgment finding that the worker had an 80% permanent partial disability because, we concluded, the trial court had improperly considered evidence of vocational disability when the worker returned to work at a wage greater than her pre-injury wage. On remand, the trial court stated that it had not intended to base its judgment on vocational evidence; nevertheless, it again determined that the worker had suffered an 80% permanent partial disability. In Reynolds II, this court held that there was not substantial evidence to support the trial court's finding of an 80% physical impairment.
Reynolds I is distinguishable because in that case the trial court had specifically stated that it "considered Reynolds's `age, education, training, and experience,'" 794 So.2d at 1196 (emphasis added) — factors that, this court observed, "are routinely considered with evidence of vocational disability," id. Here, notwithstanding the fact that the trial court recited some of the same factors in paragraph 4 of its original judgment, paragraph 3 of the same judgment indicates that the trial court was aware that it could not consider those factors. In the present case, the trial court stated in paragraph 3 that "the only issue for the Court to determine [is] the extent of [the worker's] physical impairment." Moreover, in response to the company's postjudgment motion, the trial court specifically stated that it "did not consider any evidence of vocational disability." Finally, the trial court's amended judgment omitted the information recited in former paragraph 4 and replaced it with a statement indicating that the court had "not considered any facts revealed by the evidence with respect to any vocational loss that [the worker] may have."
Reynolds II is distinguishable because, in this case, the trial court's finding that the worker's last two injuries resulted in a 30% permanent partial disability was supported by substantial evidence. Although, as the company points out, no physician assigned the worker a physical impairment rating greater than 5%, the trial court was not bound by the physicians' testimony.
 "It is well settled that the trial court has the duty to determine the extent of disability and is not bound by expert testimony in making that determination; yet, in making its determination, the trial court must consider all the evidence, including its own observations, and it must interpret the evidence to its own best judgment. Wolfe v. Dunlop Tire Corp., 660 So.2d 1345 (Ala.Civ.App. 1995). Specifically, a trial court is not bound to accept a physician's assigned impairment rating and is free to make its own determination as to an employee's *Page 1113 impairment. Checker's Drive-In Restaurant v. Brock, 603 So.2d 1066
(Ala.Civ.App. 1992).
 ". . . Nothing in § 25-5-57(a)(3)i. can be interpreted to mean that the trial court is bound by the physician's assigned physical impairment rating and prohibited from considering its own observations with regard to the impairment and then making adjustments to that rating, so long as it does not consider evidence of vocational disability and the disability rating assigned the employee is equal to the physical impairment rating."
Compass Bank v. Glidewell, 685 So.2d 739, 741 (Ala.Civ.App. 1996).
The company argues that "absent consideration of [the worker's] vocational disability, the trial court could not have reached a decision" that the worker had sustained a 30% permanent-partial-disability rating. We disagree. In making its determination as to the extent of a worker's disability, the trial court can consider the worker's subjective complaints of pain. See Michelin North America v. Hamby, 722 So.2d 770,773 (Ala.Civ.App. 1998). The worker testified that he drives a forklift in the company's warehouse, but, he said, he could not perform that job without narcotic pain medication. He takes 20 milligrams of Oxycontin every 12 hours and 5 milligrams of Oxycontin-IR once every 6 hours as needed for pain. The worker testified that his supervisors allow him to work at his own pace and to sit down or lie down in a back room at work when his pain becomes so severe he cannot continue. The worker's treating physician testified that the worker's complaints of pain are consistent with his injuries and that the worker will likely need surgery in the future to repair his herniated and ruptured discs.
The judgment of the circuit court is affirmed.
AFFIRMED.
YATES, P.J., and MURDOCK, J., concur.
PITTMAN, J., concurs in the result.
THOMPSON, J., dissents.