YATES, Presiding Judge.
Christie Jo Hood sued her employer, Hardee’s Food Systems, Inc., on April 11, 2000, seeking to recover workers’ compensation benefits for injuries she sustained during the course of her employment. Following an ore tenus proceeding, the trial court, on January 13, 2003, entered an order finding that Hood had sustained a 90% loss of earning capacity and awarding her benefits. Hardee’s appeals.
This case is governed by the 1992 Workers’ Compensation Act. This Act provides that an appellate court’s review of the standard of proof and its consideration of other legal issues shall be without a presumption of correctness. § 25—5—81(e)(1), Ala.Code 1975. It further provides that when an appellate court reviews a trial court’s findings of fact, those findings will not be reversed -if they are supported by substantial evidence. § 25—5—81(e)(2). Our supreme court “has defined the term ‘substantial evidence,’ as it is used in § 12-21-12(d), to mean ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court has also concluded: “The new Act did not alter the rule that this court does not weigh the evidence before the trial court.” Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995).
Hood was employed by Hardee’s as an assistant manager on the date of her injury. She had an average weekly wage of $379.80. Hood was injured on September 10, 1998, when her hair got caught in an exhaust fan, suddenly jerking her head into the fan and cutting her. She stated that she had to free herself from the fan by ripping her hair from her head.
Hood was treated by Dr. Johnny E. Bates following the workplace accident. Hood complained of headaches, neck pain, and dizziness following the accident. She additionally complained about a “bald spot” and a scar that resulted from the accident. Dr. Bates referred Hood to a plastic surgeon for the scar to her head. The plastic surgeon performed surgery on June 1, 1999, to repair Hood’s scar. Hood subsequently underwent a second surgery to further reduce the scar. She returned to Dr. Bates with continued complaints of headaches and neck pain and was referred to Dr. David Longmire, a neurologist.
*303 Hood was first seen by Dr. Longmire on November 10, 1999; she complained of severe headaches and neck pain, which she described as radiating pain from her neck into her head, which was more severe on the left side. She informed Dr. Longmire that the symptoms had not been present before her workplace accident. Dr. Long-mire described Hood’s headaches as cervi-cogenic, identifying the source of the pain as being the muscles in Hood’s neck. He stated that such pain could be caused by the sudden jerking of the neck such as that experienced by Hood during her workplace accident. Dr. Longmire diagnosed Hood with myofacial pain syndrome, cervical radiculopathy, and cervicogenie headaches. He treated her headaches and neck pain with medication. He determined that Hood had reached maximum medical improvement on May 25, 2000.
Hood was referred for a functional capacities evaluation on May 10, 2001. The functional capacities evaluation was conducted by Dr. Eric R. Beck. Dr. Beck determined that Hood had a 15% physical-impairment rating to the body as a whole. He placed no restrictions on her walking, standing, sitting, balancing, stooping, kneeling, crouching, squatting, and reaching; however, he restricted Hood to only occasional overhead work, climbing, and looking down, and he restricted her to occasional lifting of no more than 40 pounds and frequent lifting of no more than 15 pounds. Dr. Longmire testified that he agreed with the 15% physical-impairment rating assigned to Hood and with the restrictions placed upon her.
Hood returned to her position of assistant manager with Hardee’s shortly after her injury at the same rate of pay she was earning before her injury. Hardee’s terminated Hood’s employment in August 1999, approximately 11 months after her injury. Hood claims that her physical problems, the side effects of her medication, and work-related issues led to her losing her job.
Following her employment with Har-dee’s, Hood was employed by another fast-food restaurant for approximately three months. She left that job because “[she] found a better opportunity at [Jack’s Family Restaurants].” Hood was employed as a manager trainee by Jack’s and earned a weekly wage of $375. Hood’s tax records submitted into evidence indicate that she earned more wages while employed at Jack’s than she did while she was employed at Hardee’s. Hood worked for Jack’s for approximately two years before resigning her employment.
The trial court’s order stated, in part:
“[T]he plaintiff, Christie Jo Hood, was an adult female, 26 years of age at the time of hearing; that she has a high school and one semester of college education; that the plaintiffs employment training and history is that of a manual laborer, and that she is not now trained or suited for any type of work or employment other than as a manual laborer.”
Because Hood returned to work after her injury at a wage equal to or greater than.her preinjury wage, § 25 — 5—57(a)(3)i., Ala.Code 1975, is applicable to the facts of this case. That section reads:
“Return to Work. If, on or after the date of maximum medical improvement, ... an injured worker returns to work at a wage equal to or greater than the worker’s pre-injury wage, the worker’s permanent partial disability rating shall be equal to his or her physical impairment and the court shall not consider any evidence of vocational disability.”
With regard to § 25 — 5—57(a)(3)i., this court has stated:
*304 “ ‘It is well settled that the trial court has the duty to determine the extent of disability and is not bound by expert testimony in making that determination; yet, in making its determination, the trial court must consider all the evidence, including its own observations, and it must interpret the evidence to its own best judgment. Wolfe v. Dunlop Tire Corp., 660 So.2d 1345 (Ala.Civ.App.1995). Specifically, a trial court is not bound to accept a physician’s assigned impairment rating and is free to make its own determination as to an employee’s impairment. Checker’s Drive-In Restaurant v. Brock, 603 So.2d 1066 (Ala.Civ.App.1992).
“ ‘... Nothing in § 25-5-57(a)(3)i. can be interpreted to mean that the trial court is bound by the physician’s assigned physical impairment rating and prohibited from considering its own observations with regard to the impairment and then making adjustments to that rating, so long as it does not consider evidence of vocational disability and the disability rating assigned the employee is equal to the physical impairment rating.’ ”
Dairyman’s Supply Co. v. Teal, 863 So.2d 1109, 1112-13 (Ala.Civ.App.2003), quoting Compass Bank v. Glidewell, 685 So.2d 739, 741 (Ala.Civ.App.1996).
It appears from the trial court’s order that it considered certain factors routinely considered by this court as evidence of vocational disability, i.e., the employee’s age, education, training, and experience. See Wal-Mart Stores, Inc. v. Reynolds, 794 So.2d 1193 (Ala.Civ.App.2001). Because § 25-5-57(a)(3)i., Ala. Code 1975, prohibits the consideration of evidence regarding vocational disability when an employee returns to work at a wage equal to or greater than his or her preinjury wage, we have no choice but to reverse the judgment of the trial court and remand the case for the trial court to enter an order without considering evidence of vocational disability, or making it clear that such evidence was not considered by the court in reaching its determination as to the extent of Hood’s disability.
Hardee’s also argues that the trial court erred in awarding Hood permanent partial disability benefits in excess of the statutory maximum allowed by law. Section 25-5-68(a), Ala.Code 1975, provides “the maximum compensation payable for permanent partial disability shall be no more than the lesser of $220.00 per week or 100 percent of the average weekly wage.” The trial court awarded Hood permanent partial disability benefits of $227.86 per week for 294.43 weeks. Accordingly, on remand, should the court again determine that Hood is entitled to permanent partial disability benefits, the award should not exceed the statutory maximum allowed by § 25-5-68(a), Ala. Code 1975. Further, the 15% attorney fee that was calculated in part on the basis of the court’s erroneous award of permanent partial benefits above the statutory maximum allowed must also be recalculated on remand. See G.UB.MK. Constructors v. Traffanstedt, 726 So.2d 704 (Ala.Civ.App.1998).
REVERSED AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.