Sherrie D. Brock suffered a burn to her left foot in an accident that occurred while she was performing her job for Checker's Drive-In Restaurant (Checker's). She subsequently brought an action to recover benefits under the workers' compensation statute of this state.
Following an ore tenus proceeding, the trial court found that Brock had sustained a work-related injury resulting in a 25% medical impairment to the lower extremity and a 7% impairment to the whole person. The trial court then concluded that
 "[Brock] has sustained a serious disfigurement, not resulting from the loss of a member or other injury specifically compensated, materially affecting her employability in the employment in which she was injured or other employment for which she is then qualified."
Based on this legal conclusion, the trial court awarded Brock compensation benefits at the minimum statutory rate of $101 per week for a period of 100 weeks pursuant to the disfigurement provision of Ala. Code 1975, § 25-5-57(a)(3)a34. Accordingly, the court ordered that Brock was to receive a total of $10,100 in benefits.
Checker's appeals, contending that the trial court erred in awarding Brock benefits under the disfigurement provision of the workers' compensation statute. It asserts that Brock's recovery should instead have been limited to the scheduled allowance under § 25-5-57(a)(3)a. 14, Ala. Code 1975, for the permanent partial loss of use of her left foot.
Initially, we note that the standard of review in workers' compensation cases is a two-step process. This court must first determine if any legal evidence supports the trial court's findings. If such evidence exists, we will then determine whether any reasonable view of that evidence supports the trial court's judgment. Ex parte Eastwood Foods, Inc., 575 So.2d 91
(Ala. 1991).
The record indicates that on August 14, 1990, Brock was employed as a production worker for Checker's, a drive-in fast food restaurant, when a co-worker accidently spilled hot cooking grease on her left foot, causing a serious burn. Brock was subsequently hospitalized for 12 days at the University *Page 1068 
of South Alabama burn clinic, where she received treatment for the burn and ultimately underwent a skin graft operation.
Dr. Arnold Luterman, a burn specialist and professor of surgery at the University of South Alabama, performed the operation on Brock in August 1990 and continued to treat her on an outpatient basis at the time of the trial in October 1991. He released Brock to return to work in January 1991, at that time restricting her from extensive standing and indicating that if she did stand she should be walking. Dr. Luterman further required Brock to wear a support garment on her foot in order to alleviate pain and swelling. She was also advised to avoid temperature extremes and toxic contact to the burn area. Additionally, she was required to wear soft shoes in order to prevent trauma to the grafted area.
Because her position on the production line at Checker's required constant standing in one work area and because Checker's apparently was unwilling to agree to all of the restrictions Dr. Luterman had placed on her work, Brock left her job with the restaurant.
At trial Brock testified that she experiences debilitating pain in her foot if she stands up for more than 20 or 30 minutes. She takes pain medication prescribed by Dr. Luterman and indicated that her continued need to take this medication causes her to become frustrated at times. She applied for a job as an aide in a nursing home after leaving Checker's; however, she was unable to perform this work because it involved prolonged standing. At the time of the trial she was employed as a housekeeper at a motel where she was able to sit, stand, and take breaks as needed to alleviate the pain in her foot. Because, she says, her pain medication impairs her ability to concentrate, she avoids taking it when she is working. Brock's employment history, including her job with Checker's, reveals that she has worked in only minimum wage positions. She completed the twelfth grade and received vocational training as a nurse's aide.
Dr. Luterman, who testified by deposition, assigned permanent medical impairment ratings of 25% to Brock's left foot, 18% to her lower left extremity, and 7% to the body as a whole. He indicated that, while pain is largely a subjective phenomenon, the pain that Brock complains of is consistent with the kind of injury she received and that he believed it will be necessary for her to continue taking pain medication for some time. Dr. Luterman also described the burn site and grafted area, which extends over the top and side of Brock's left foot. He indicated that in the area of the graft, there is a minor amount of hypertrophic scarring, or irregularity in the healing of the skin, but that this scarring did not interfere with Brock's gait. He stated that some parts of the burn site could be expected to be hypersensitive, while other parts actually had very poor sensitivity. He also indicated that the graft area is hyperpigmented — i.e., the skin is somewhat darker than the unaffected skin of the foot — but that over time the variation in color would be less pronounced. However, he related that the difference in the contour of the skin in the grafted and ungrafted areas would be permanent.
Section 25-5-57(a)(3)a34, Ala. Code 1975, which the trial court tracked in part in its final judgment, provides for permanent partial disability benefits "[f]lor seriousdisfigurement, not resulting from the loss of a member or other injury specifically compensated, materially affecting theemployability of the injured person in the employment in which he was injured or other employment for which he is then qualified. . . ." (Emphasis supplied.)
We must conclude that Brock has failed to present evidence that her employability was materially affected by the physical disfigurement of her foot. It is not apparent from the record that the scar from Brock's skin graft would be visible during any employment she might seek, and no testimony was presented indicating that she lost or might lose employment as a result of the scar. In fact, a careful examination of the record reveals that the only testimony regarding Brock's post-injury *Page 1069 
employability related to the pain in her foot and the side effects of that pain, and not to the disfigurement of her foot. We recognize that the issue of whether an employee's disfigurement materially affects her employability is a question of fact for the trial court. Shoney's Restaurants v.Biddle, 496 So.2d 70 (Ala.Civ.App. 1986). However, because Brock failed to present any evidence establishing a connection between her physical disfigurement and her employability, we hold that the trial court erred in awarding her compensation under § 25-5-57(a)(3)a34.
Checker's contends that the injury to Brock's foot is a "scheduled-member" injury specifically compensated under §25-5-57(a)(3)a. 14, Ala. Code 1975. However, this contention ignores the considerable evidence before the trial court that Brock's injury extended to her body as a whole. It is well settled that where the injury to one part of the body affects the other parts of the body and produces a greater or more prolonged incapacity than the specific injury would naturally produce, or causes an abnormal and unusual incapacity with respect to the member, an employee is not limited in his or her recovery to the amount allowed under the schedule for injury to one member. Whitehead Forest Products, Inc. v. Huggins,579 So.2d 657 (Ala.Civ.App. 1991). Under such circumstances, the employee may, where appropriate, recover benefits under § 25-57(a)(3)g., Ala. Code 1975.
It was Dr. Luterman's opinion that, in addition to injuring her foot, Brock has sustained a medical impairment of 18% to her lower left extremity and 7% to her body as a whole. In its findings of fact, the trial court accepted Dr. Luterman's opinion as to the 7% impairment to the body as a whole. While the court found that Brock had sustained a 25% impairment to her lower extremity, the court was not bound to accept Dr. Luterman's rating and was free to make its own determination as to Brock's impairment. Patrick v. FEMCO Southeast, Inc.,565 So.2d 644 (Ala.Civ.App. 1990). As previously noted, Dr. Luterman indicated a number of restrictions for Brock that significantly limited her ability to stand, a body function involving the feet, legs, and body as a whole. Brock testified that the pain in her foot prevented her from standing for long periods of time. Further, although Brock stated that she did not take her pain medication while she was working, she indicated that this was because it made it difficult for her to concentrate on the job. Brock, moreover, evidenced frustration over her continued reliance on medication.
In view of the evidence, we find that Brock's injury has produced a greater interference with her ability to work than would be expected from a loss of use limited simply to her foot. The record suggests that virtually the only work she has done or is capable of doing involves prolonged standing, and the effects of her injury cannot be truthfully and fairly expressed in any percentage of disability of any designated member or members of her body. See Bell v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968). Although the trial court's final judgment contains a finding with respect to Brock's medical impairment, the court's judgment does not include a finding concerning the degree to which Brock's work-related injury has affected her ability to earn. In the absence of such a finding regarding Brock's loss of earning capacity, no grounds for awarding compensation under § 25-5-57(a)(3)g. exist. MarleyErectors, Inc. v. Rice, 560 So.2d 1083 (Ala.Civ.App. 1990). Consequently, this court must reverse and remand for a determination of whether Brock suffered a loss of earning capacity and is due to receive benefits pursuant to §25-5-57(a)(3)g.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and THIGPEN, J., concur. *Page 1070