984 So.2d 1146 (2007)
Ex parte MASTERBRAND CABINETS, INC.
(In re Masterbrand Cabinets, Inc.
v.
Drucilla D. Johnson).
1041405.
Supreme Court of Alabama.
June 8, 2007.
Rehearing Denied November 16, 2007.
Mark J. Romaniuk and Kelley Bertoux Creveling of Baker & Daniels, LLP, Indianapolis, Indiana; and Joseph T. Carpenter of Carpenter, Ingram, Prater & Mosholder, LLP, Montgomery, for petitioner.
Donald W. Lang, Sylacauga, for respondent.
Terry A. Moore of Austill, Lewis, Simms, Pipkin & Moore, P.C., Mobile, for amicus curiae Georgia Pacific Corporation, in support of the petitioner.
Joseph H. Driver of Carr, Allison, Pugh, Howard, Oliver & Sisson, Birmingham, for amicus curiae Alabama Self-Insurers Association, in support of the petitioner.
Prior report: Ala.Civ.App., 984 So.2d 1136.
PER CURIAM.
AFFIRMED. NO OPINION.
See Rule 53(a)(1) and (a)(2)(A), Ala. R.App. P.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, and BOLIN, JJ., concur.
SEE and PARKER, JJ., concur specially.
MURDOCK, J., recuses himself.
PARKER, Justice (concurring specially).
I concur in the per curiam no-opinion affirmance, but I write separately to emphasize that this Court should not depart from the compensation schedule enacted by the legislature in cases in which the plaintiff/worker complains of debilitating pain, unless the plaintiff/worker presents objective evidence that the pain he or she experiences is truly disabling.

I. Case History
Drucilla Johnson began working for Masterbrand Cabinets, Inc., in February 2000. Her tasks included inspecting and repairing cabinet doors during the finishing process. The job required light sanding, puttying cracks, and flipping the cabinet doors and involved repetitive motions of her hands, arms, and wrists. She handled 380-500 cabinet doors of varying sizes and weights each day.
After several months of employment, Johnson experienced pain and swelling in her wrists, hands, and arms. She was eventually diagnosed with carpal tunnel syndrome, and she had surgery on both hands in January and February 2001. She then returned to work on light duty, but the pain and the swelling continued, even though she received physical therapy and took prescribed muscle relaxants. She declined to have pronator surgery suggested by her doctor, Dr. Sharon L. Colgin, a surgeon who specializes in hand surgery, because the earlier surgeries had not given her much relief and because Dr. Colgin could not guarantee that the surgery would be successful. After consulting with a vocational expert who had examined and tested Johnson, Dr. Colgin returned Johnson to work but limited her to work that did not require repetitive motions of her hands, wrists, and arms. When Johnson continued to suffer pain and swelling in her arms, Dr. Colgin told her that, because it appeared that the only jobs Masterbrand had for Johnson involved repetitive arm motions, Johnson should not work at Masterbrand at all. Johnson stopped working there in May 2002.
After she stopped working at Masterbrand, her condition appears to have deteriorated significantly. At the time of the trial in August 2003, she was complaining of swelling and constant throbbing pain in her hands and arms that often reached a *1148 level of 8 to 10 on a scale of 0 to 10, with 10 being the worst.[1]
Although the testimony concerning the extent of Johnson's disability varied, the trial court agreed with the opinion of Johnson's vocational expert that Johnson suffers a 100% vocational disability and loss of earning capacity. The trial court held:
"[T]he injuries . . . and the resulting pain and disability therefrom, extends to other parts of her body . . . and the court finds that [Johnson] suffers a 100% permanent and total disability to the body as a whole with a consequent 100% loss of earning capacity."
Masterbrand appealed. The Court of Civil Appeals affirmed the trial court's judgment, concluding that the evidence indicated that Johnson was at maximum medical improvement at the time of the trial and that there was sufficient evidence, albeit conflicting, to support the trial court's conclusion that Johnson's disability is complete and permanent. Masterbrand Cabinets, Inc. v. Johnson, 984 So.2d 1136 (Ala.Civ.App.2005). Concerning the treatment of the injury as an unscheduled injury to the body as a whole, rather than as a scheduled injury to Johnson's arms under § 25-5-57(a)(3), Ala.Code 1975, the Court of Civil Appeals said:
"We do not read Ex parte Drummond [Co., 837 So.2d 831 (Ala.2002),] as foreclosing compensation outside the schedule when an injury, although to a scheduled member, entails `an abnormal and unusual incapacity with respect to the member'  in particular, a debilitating pain  that impairs the body as a whole in a manner not contemplated by the schedule. The Supreme Court specifically explained in Ex parte Drummond that its original intention in adopting in Bell [v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968),] an exception to the workers' compensation schedule had been to `address those instances where the injury to a scheduled member caused such impairment to the body as a whole that the benefits reflected on the schedule were not appropriate.' . . .
"Although it then restated the applicable test as whether `"the effects of the loss of the member extend to other parts of the body and interfere with their efficiency,"' the Drummond Court did not have before it a case that required it to address an abnormal or unusual pain that, although isolated to a scheduled member, caused a more general debilitating effect on the body as a whole."
984 So.2d at 1144. The Court of Civil Appeals then quoted the following from Ex parte Drummond:
"`This case does not present a situation in which the pain, although isolated to the scheduled member, causes a disability to the body as a whole. We recognize that pain can be totally, or virtually totally, debilitating, but this case does *1149 not present such a situation; therefore, we decline to address that situation here.'"
984 So.2d at 1144 (quoting Ex parte Drummond Co., 837 So.2d 831, 836-37 n. 11 (Ala.2002)). Masterbrand petitioned for a writ of certiorari. This Court granted the writ. Georgia Pacific Corporation and the Alabama Self-Insurers Association filed amici curiae briefs in support of Masterbrand.

II. Analysis
Before the advent of workers' compensation statutes, common-law principles governed compensation for work-related injuries. An unfortunate consequence was expensive and time-consuming litigation, and injured employees frequently were unsuccessful in obtaining compensation because they could not afford to pay an attorney or because their employers could successfully raise common-law defenses such as the fellow-servant rule, contributory negligence, or assumption of risk.[2] A major goal of the legislature in adopting the Alabama Workers' Compensation Act, Ala.Code 1975, § 25-5-1 et seq. ("the Act"), was to remove these common-law defenses in most workers' compensation cases and also to minimize the cost of litigating a worker's compensation claim. The legislature included in the Act a fixed schedule that sets the compensation on various types of injuries. See § 25-5-57. Although with the enactment of workers' compensation statutes the worker lost the right to a jury trial in most cases, he or she gained the right to a speedier and less expensive determination without having to establish that the employer was negligent and that the employee was not contributorily negligent.
As the amicus curiae brief filed by Georgia Pacific observes, the legislature's primary purpose in enacting the workers' compensation schedule as part of the Act was to minimize costly and time-consuming litigation over work-related injuries. The legislature did not totally eliminate litigation, but the occasions on which injuries could be compensated outside the schedule were carefully limited.
The schedule for the applicable members in Johnson's case, § 25-5-57(a)(3)a.24, sets forth specifically the compensation to be awarded for the "loss of two arms, other than at the shoulder," and § 25-5-57(a)(3)d provides that the permanent and total loss of the use of a member shall be considered as equivalent to the loss of that member. Although the evidence was disputed, the trial court found that Johnson had suffered the permanent and total loss of the use of both arms, other than at the shoulder, so by the terms of the Act the compensation for Johnson's loss is fixed by § 25-5-57(a)(3)a.24.
However, in Bell v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968), the Court began a departure from the strict application of the compensation schedule in the Act. The Court stated:
"[A]lthough the injury itself is to only one part or member of the body, if the effect of such injury extends to other parts of the body, and produces a greater or more prolonged incapacity than that which naturally results from the specific injury, or the injury causes an abnormal and unusual incapacity with respect to the member, then the employee is not limited in his recovery under the [Workers'] Compensation Law to the amount allowed under the schedule for injury to the one member."
282 Ala. at 646, 213 So.2d at 811. The Court in Bell cited 2 Larson, Workmen's *1150 Compensation Law § 58.20 at 44-45 and Workmen's compensation, 156 A.L.R. 1344 (1945) for the proposition that when an injury to one part of the body extends to other parts and produces an incapacity the employee is not limited to the compensation provided for by the schedule. The Court quoted Warrior Stone & Contracting Co. v. De Foor, 241 Ala. 227, 229, 2 So.2d 430, 431 (1941), for the proposition that certain injuries "`can not be truthfully and fairly expressed in any percentage of disability of any designated member or members of the petitioner's body.'"
However, the Court in Bell made no attempt to reconcile its decision with the plain language of § 25-5-57.
A series of cases followed in Bell's wake in which the Court of Civil Appeals considered employees' injuries outside the compensation schedule in § 25-5-57: Dale Motels, Inc. v. Crittenden, 50 Ala.App. 251, 278 So.2d 370 (1973); Richardson Homes Corp. v. Shelton, 336 So.2d 1367 (Ala.Civ. App.1976); Republic Steel Corp. v. Kimbrell, 370 So.2d 294 (Ala.Civ.App.1979); Smith v. Capps, 414 So.2d 102 (Ala.Civ. App.1982); Gold Kist, Inc. v. Casey, 495 So.2d 1129 (Ala.Civ.App.1986); Checker's Drive-In Rest. v. Brock, 603 So.2d 1066 (Ala.Civ.App.1992); U.S. Steel v. Nelson, 634 So.2d 134 (Ala.Civ.App.1993); American Cast Iron Pipe Co. v. Uptain, 680 So.2d 378 (Ala.Civ.App.1996); and A.M.R. Servs. v. Butler, 697 So.2d 472 (Ala.Civ. App.1997).
In all these cases, the intent of the Court of Civil Appeals was to provide justice and fair compensation to injured employees; the result, however, was to effectively rewrite § 25-5-57 by placing certain types of injuries outside the schedule. As a further result, by removing certain types of injuries from the schedule and subjecting the injured employee to costly and time-consuming litigation, one of the basic purposes of the Act was undermined.
In 2002, this Court decided Ex parte Drummond Co., 837 So.2d 831 (Ala.2002). The Court quoted 4 Lex K. Larson, Larson's Workers' Compensation Law § 87.02 (2001):
"`The great majority of modern decisions agree that, if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive.'"[3]
837 So.2d at 834. This Court then stated that "[b]ecause of the confusion that has developed surrounding the Bell test, we today adopt the language recited above from Larson, Workers' Compensation Law § 87.02, as the test for determining whether an injury to a scheduled member should be treated as unscheduled. . . ." This Court then held, "[T]herefore, we overrule Bell insofar as it established a different test, and we further overrule those cases listed in notes 5 through 8 [A.M.R. Services, Gold Kist, Republic Steel Corp., Richardson Homes Corp., Checker's Drive-In Restaurant, American Cast Iron Pipe Co., U.S. Steel, Smith, and Dale Motels] insofar as they expanded the Bell test." 837 So.2d at 835.
*1151 The Ex parte Drummond decision effectively upheld that portion of Bell that allowed injuries to be compensated outside the schedule "`if the effect of such injury extends to other parts of the body, and produces a greater or more prolonged incapacity than that which naturally results from the specific injury. . . .'" 282 Ala. at 646, 213 So.2d at 811. But Ex parte Drummond effectively overruled that portion of Bell that allowed compensation outside the schedule "if the injury causes an abnormal and unusual incapacity with respect to the member. . . ." 282 Ala. at 646, 213 So.2d at 811. In effect, Ex parte Drummond held that an injury that extends beyond the injured member and affects the efficiency of other members may be compensated outside the schedule, but an injury that affects the efficiency of only the injured member, albeit in an abnormal and unusual way, may be compensated only within the schedule. But as previously noted, Ex parte Drummond, in footnote 11, left open the possibility that in a given situation pain in one member could be so disabling as to prevent a person from working.
However, proving that disabling pain exists is problematic. Other courts, wary of the reliability of testimony concerning pain, have encouraged examination of medical evidence in addition to lay testimony to determine whether the effect of the pain is truly disabling. See Morris v. Lansdell's Frame Co., 547 So.2d 782, 785-86 (Miss.1989) ("[W]e are seriously concerned that there is a great potential for abuse in claims which are based predominantly upon pain reported by the patient, particularly in circumstances where the patient's testimony or statement to the physician is the sole evidence of its continued presence. In these cases it would be prudent to obtain additional medical evidence to either support or dispute the claim."); Crisp v. Southern Silk Screen, Inc., 451 So.2d 1260, 1262 (La.Ct.App.1984) ("A compensation claimant who alleges disability due to substantial or appreciable pain must establish that condition to a reasonable certainty and by a fair preponderance of the evidence. . . . A claimant is not disabled solely because of some residual pain or discomfort. Pain is disabling only if it is substantial. . . . Whether a claimant has met this burden is a question of fact based on the totality of the lay and medical evidence."). Alabama decisions have reflected similar concerns over stand-alone subjective testimony by the claimant as to the degree of pain the claimant suffers.[4]
The Act, and particularly the schedule at § 25-5-57(a)(3)a, does not provide for an exception to the scheduled payments. Instead, through Bell and Ex parte Drummond, this Court has created an exception, *1152 allowing unscheduled awards for injuries to members of such severity that they impact the claimant's entire body. Because this court-created exception supplements the statutory compensation schedule in § 25-5-57(a), we must apply it narrowly. Therefore, a claimant seeking compensation outside the schedule should provide objective evidence that disabling pain exists.
We should require a claimant who seeks compensation beyond the schedule in the Act because of disabling pain to prove either (1) that his or her pain extends to other parts of the body and so interferes with the use of those parts as to have a disabling effect on the entire body or (2) that the pain "is sufficiently abnormal in its frequency or continuity and in its severity," Masterbrand, 984 So.2d at 1145, and is present even when the scheduled member is not used, such that it has a disabling effect on the body as a whole. The resolution of this question of fact depends on the "totality of the lay and medical evidence" before the fact-finder. Crisp, 451 So.2d at 1262. The pain claimed, thus, must be consistent with the medical evaluation of the injury.
This case raises the issue of disabling pain, which the Court in footnote 11 in Ex parte Drummond said was not present there:
"This case does not present a situation in which the pain, although isolated to a scheduled member, causes a disability to the body as a whole. We recognize that pain can be totally, or virtually totally, debilitating, but this case does not present such a situation; therefore, we decline to address that situation here."
837 So.2d at 836-37 n. 11. The Ex parte Drummond Court did not decide that debilitating pain was a basis for taking an injury out of the schedule for the purpose of determining compensation; the Court simply noted that this issue was not presented in that case. The Court recognized that a situation involving debilitating pain could arise, but the Court did not say what should be done in such a situation. Significantly, several of the Court of Civil Appeals cases overruled by this Court in Ex parte Drummond involved debilitating pain similar to that claimed here: Gold Kist, Inc. v. Casey, supra (involving carpal tunnel syndrome that caused the loss of the use of the employee's right hand resulting in an inability to concentrate); A.M.R. Servs. v. Butler, supra (involving three fractured fingers that caused residual pain); Richardson Homes Corp. v. Shelton, supra (involving five fractured metatarsal bones that caused pain extending up to the knee, swelling after standing for three hours, and difficulty sleeping at night). In all those cases the trial court awarded nonscheduled benefits. In all those cases the Court of Civil Appeals affirmed the trial court's judgment. This Court overruled all those decisions in Ex parte Drummond; however, the Court did not completely rule out the possibility that a worker could be compensated outside the schedule in some exceptional circumstances, and the Court did not eliminate the possibility that in some circumstances pain could be so debilitating as to entirely prevent a person from holding gainful employment. That case is now before us.
Johnson does not claim that her actual injury extends beyond her hands and arms. Rather, she claims that the pain in her hands and arms is so debilitating that it effectively interferes with the rest of her body. She rates the pain in her hands and arms as 8 to 10 on a scale of 0 to 10, but I would be reluctant to affirm an unscheduled award based upon that subjective testimony alone. Dr. Colgin acknowledged that when a patient is asked to rate her pain on a scale of 0 to 10, the patient's answer is going to be somewhat subjective. However, Dr. Colgin testified that she tries to minimize the subjective nature of *1153 that question by explaining to the patient that 0 means no pain at all and 8 to 10 means "I have to go to the emergency room." This helps the patient be more objective, although Dr. Colgin acknowledged that one person's emergency-room point may not be another person's emergency-room point.
In this case, the record presents objective evidence that disabling pain does exist. Dr. Colgin, a surgeon who specializes in hand surgery, testified that she has practiced hand surgery since 1991 and that she has seen and treated Johnson on numerous occasions from November 2001 until July 2002. She testified that the pain Johnson described was consistent with the pain generally associated with pronator syndrome. She testified that she conducted provocative testing of Johnson's median nerves and determined that the test produced substantial pain. In physical-therapy sessions she determined that Johnson's pronator muscles were extremely tender; when she tapped the nerve, a response of tingling was produced that, Dr. Colgin testified, is "hard for somebody to fake." She said Johnson also displayed objective criteria that indicate pain, such as elevated blood pressure and accelerated heart rate and breathing rate. She also said Johnson's forearms were "as hard as any female I'd ever seen" and that this is an objective indicator of subjective pain.
I therefore conclude that the evidence of disabling pain, although not conclusive, is sufficient that the trial court's finding that Johnson suffered disabling pain is not clearly erroneous. I therefore concur to affirm the judgment of the Court of Civil Appeals.
SEE, J., concurs.
NOTES
[1] Commenting on the subjectivity of this kind of testimony, the Alabama Self-Insurers Association observes in its amicus curiae brief at 14:

"It is apparent that the primary distinction between the holdings [of the Court of Civil Appeals] in Masterbrand [Cabinets, Inc. v. Johnson, 984 So.2d 1136 (Ala.Civ. App.2005),] and [Kohler Co. v.] Miller [, 921 So.2d 436 (Ala.Civ.App.2005),] is that in Masterbrand the employee testified to having 8 out of 10 pain, where in Miller the employee testified to having 6 out of 10 pain. Any rule of law based upon this principle will only lead to inconsistencies in judgments. . . . "
See Armstrong v. Lewis & Assocs. Constr. Co., 469 So.2d 605, 607 (Ala.Civ.App.1984), in which the Court of Civil Appeals affirmed a trial court's determination that the worker's disability was only 5% because the evidence of permanent and total disability was "entirely subjective."
[2] 1 Terry Moore, Alabama Workers' Compensation § 1:4-5 (1998).
[3] Although this Court quoted from Larson in Ex parte Drummond and other Alabama courts have frequently quoted Larson, Moore, Alabama Workers' Compensation § 2:8, observes that "[i]n adopting the workers' compensation laws, the Alabama legislation created a system of compensation different from any other type of compensation system. The Workers Compensation Act is sui generis." (Footnote omitted.) However, in § 3:10 Moore does note that the Act was modeled after the Workers' Compensation Law of Minnesota, though its resemblance to Minnesota's law has diminished with time. For that reason, citations from other jurisdictions and from treatises about workers' compensation generally are of limited value in interpreting Alabama's Workers' Compensation Act.
[4] Although Alabama courts have recognized that the injured person's subjective testimony concerning his or her pain is a relevant factor to be considered in light of the totality of evidence, a trial court may properly determine that it is insufficient in itself to constitute the basis for an award outside the compensation schedule in § 25-5-57. Lofton v. Brown & Root, 591 So.2d 88 (Ala.Civ.App. 1991), involved a worker who sought permanent-total-disability benefits after suffering a fall at work. The Court of Civil Appeals noted that "the only evidence concerning Lofton's pain is his own subjective testimony. It is apparent that the trial court did not find this evidence persuasive in light of the other testimony that was presented. A reasonable view of this evidence supports the court's judgment[;] thus it cannot be disturbed on appeal." 591 So.2d at 89-90. Other Alabama cases have held that the injured person's subjective testimony about his or her pain is entitled to be considered, but in each of these cases the person's testimony was considered along with other, more objective evidence. Dolgencorp, Inc. v. Hudson, 924 So.2d 727 (Ala.Civ.App.2005); Lemons v. Alabama Dep't of Fin., 856 So.2d 847 (Ala.Civ.App.2003); and Checker's Drive-In Rest. v. Brock, supra.