On Application for Rehearing

MOORE, Judge.
This court’s opinion of October 17, 2008, is withdrawn, and the following is substituted therefor.
Norandal U.S.A., Inc. (“the employer”), appeals from a judgment awarding Welton “Sonny” Graben (“the employee”) permanent-total-disability benefits under the Alabama Workers’ Compensation Act, Ala. Code 1975, § 25-5-1 et seq., on account of a right-knee injury arising out of and in the course of his employment. We reverse the trial court’s judgment.

Procedural History

On November 2, 1999, the employee filed a complaint against the employer seeking workers’ compensation benefits. In that complaint, the employee alleged that he had twisted his right knee and had injured his “right leg and knee” on July 10, 1997, due to an accident arising out of and in the course of his employment with the employer. On November 12, 1999, the employer filed an answer generally denying liability for the injury.
The employee filed an amended complaint on January 29, 2002. In the amended complaint, the employee reasserted his earlier claims, added a second defendant, and alleged further that he had developed dermatitis and “other dermatological inflammations or disorders” from repeated exposure to formaldehyde and other chem *408 icals or allergens in the course of his employment up to August 2001.[1] The employer filed an answer to the amended complaint on February 4, 2002, again denying liability.
After an ore tenus hearing on May 29, 2007, the trial court entered a judgment on July 12, 2007, awarding the employee permanent-total-disability benefits for his right-knee injury. The employer timely appealed.[2]

Facts

The facts pertinent to this appeal show that on July 10,1997, the employee twisted his knee while pushing a drum of paint at work. The initial treating physician diagnosed a medial-meniscus tear and the aggravation of an arthritic condition in the employee’s right knee. The employee eventually underwent three surgeries for those injuries, including an arthroscopic surgery on November 10, 1997, a partial knee replacement on October 24, 2001, and a “debridement and synovectomy of medial compartment, suprapatellar pouch and medial gutter” and “ehondroplasty of the patellafemoral joint” on March 10, 2004. According to the employee and some of the medical records introduced into evidence, those surgeries did not eliminate the constant pain in the employee’s right knee or the instability in the joint that sometimes caused his right knee to buckle.
The employee testified that on April 3, 2004, three weeks after his last surgery, his right knee gave way causing him to fall to the ground while on a personal errand. The employee testified that he initially fell on his right hand, injuring his right shoulder. He then fell on his left hip, causing severe pain in that area, as well as pain in his lower back. The employee was eventually diagnosed with a rotator-cuff tear, a contused left hip, and lumbar radiculopa-thy with associated left-foot drop. The left-hip problem resolved quickly, but the shoulder and lower-back problems persisted to the point that the employee underwent fusion surgery on his lumbar spine on March 30, 2005, and shoulder surgery on March 2, 2006. The employee did not inform the employer of the April 3, 2004, fall and never filed a claim on account of that accident.
The employee’s attorney referred the employee to Dr. Shelinder Aggarwal, a physician who had not been authorized by the employer, for a medical examination on July 17, 2006. The employee related to Dr. Aggarwal that he used a cane to ambulate, and Dr. Aggarwal observed that the employee had an antalgic gait. Dr. Aggar-wal testified that the way the employee walked indicated that the employee had pain in his right leg. According to Dr. Aggarwal, that pain would likely cause the employee pain in the low-back and hip area and would also preclude the employee *409 from running, crawling, bending at the knee, squatting, and stooping.
At trial, the employee testified that his right knee continues to buckle and that he has poor balance. The employee stated that he cannot stoop or bend very much. He also testified that he cannot stand or walk very long without pain and that he has been using a cane, crutch, or walking stick since 2005. The employee testified that when he puts his right knee down, he feels severe pain from his foot to his lower back. His pain also extends from his right knee into his low back and hip. The employee rated his right-knee pain as 7 out of 10, with 10 being the worst. He also testified that the only time he gets relief from his right-knee pain is when he lays down and rests, as he does for two to three hours every day. Any active use of the right knee worsens his pain.

Issue on Appeal

The sole issue on appeal is whether the trial court erred in awarding the employee nonscheduled permanent-total-disability benefits for his right-knee injury. The employer first contends that the trial court erred as a matter of law in awarding the employee nonscheduled benefits on account of his lower-back and right-shoulder injuries sustained in the April 3, 2004, fall. The employer secondly argues that the trial court erred in awarding nonscheduled benefits on account of what the trial court described in its judgment as “severe, throbbing, chronic, and sometimes sharp” pain in the employee’s right knee that persists “even though [the employee] does not work and refrains from using the right leg to the extent he reasonably can do so.... ” See Masterrand Cabinets, Inc. v. Johnson, 984 So.2d 1136, 1144-45 (Ala.Civ.App.2005), aff'd, Ex parte Masterrand Cabinets, Inc., 984 So.2d 1146 (Ala.2007). On the other hand, the employee maintains that, even if the trial court erred in awarding nonscheduled benefits for the reasons set out in its judgment, this court may affirm its judgment on other valid grounds.

Standard of Reviere

“In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.” Ala.Code 1975, § 25 — 5—81(e)(2). “Substantial evidence” is “ ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). See also Ala.Code 1975, § 12-21-12(d).
Conclusions of law are reviewed without a presumption of correctness. Ala.Code 1975, § 25 — 5—81(e)(1). So long as due process is satisfied, see Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003), this court may affirm a correct judgment for any reason, even if the trial court did not rely on that reason in reaching its judgment. Chadwick Timber Co. v. Philon, 10 So.3d 1014, 1021 (Ala.Civ.App.2007).

Legal Analysis

For purposes of workers’ compensation, a knee injury is treated as an injury to the leg. See, e.g., Wolfe v. Dunlop Tire Corp., 660 So.2d 1345 (Ala.Civ.App.1995). Injuries to the leg are ordinarily compensated under § 25-5-57(a)(3), Ala.Code 1975. Id. Pursuant to the schedule contained therein, an employee is entitled to 200 weeks of compensation for the total loss of use of a leg, §§ 25-5-57(a)(3)a.16. & 25-5-57(a)(3)d., Ala.Code 1975, but the number of weeks of compensation is re *410 duced proportionately for a partial loss of use of the leg. See § 25-5-57(a)(3)d., Ala. Code 1975.
The compensation for the loss of use of a leg established in the schedule is intended by statute to be “in lieu of all other compensation.” § 25-5-57(a)(3)d., Ala.Code 1975. However, by caselaw, an injury to the knee may be compensated outside the schedule “ ‘if the effects of the loss of the member extend to other parts of the [employee’s] body and interfere with their efficiency.’ ” Ex parte Drummond Co., 837 So.2d 831, 834 (Ala.2002) (quoting 4 Lex K. Larson, Larson’s Workers’ Compensation Law § 87.02 (2001)).
“Based on the holding in Ex parte Jackson, [997 So.2d 1038 (Ala.2007) ], in order to prove that the effects of the injury to the scheduled member ‘extend to other parts of the body and interfere with their efficiency,’ the employee does not have to prove that the effects actually cause a permanent physical injury to nonscheduled parts of the body. Rather, the employee must prove that the injury to the scheduled member causes pain or other symptoms that render the nonscheduled parts of the body less efficient.”
Boise Cascade Corp. v. Jackson, 997 So.2d 1042, 1044 (Ala.Civ.App.2008). In order to prove that the loss of a member “interferes with the efficiency” of other parts of his or her body, a worker employee must prove that the normal effective functioning of another part of his or her body has been hindered or impeded due to the loss of the member. Id.
The trial court found that the injury to the employee’s right knee caused by the July 10, 1997, work-related accident weakened that knee. As a result of that weakness, on April 3, 2004, the employee’s right leg buckled and he fell, injuring his lower back and right shoulder. Under Alabama law, injuries received from a fall due to a leg weakened by a work-related injury are considered a direct and natural consequence of the original, compensable injury and are themselves injuries covered by the workers’ compensation laws. See, e.g., Erwin v. Harris, 474 So.2d 1125, 1127 (Ala.Civ.App.1985). However, a worker may only recover compensation for such injuries by complying with the notice statute and the statute of limitations. See Gulf States Steel, Inc. v. White, 742 So.2d 1264, 1267-68 (Ala.Civ.App.1999); and Fort James Operating Co. v. Crump, 947 So.2d 1053, 1067-68 (Ala.Civ.App.2005).
In this case, the trial court concluded that the injuries the employee received in the April 3, 2004, fall were a direct and natural consequence of the original, com-pensable right-knee injury but that the employee could not recover compensation for those injuries. In his brief, and again at oral argument, the employee conceded the correctness of that legal conclusion. Based on that concession and the fact that the employee did not file a cross-appeal as to that issue, the trial court’s conclusion is now the law of the case. See G.E.A. v. D.B.A., 920 So.2d 1110, 1115 (Ala.Civ.App.2005) (quoting Bagley ex rel. Bagley v. Creekside Motors, Inc., 913 So.2d 441, 445 (Ala.2005), quoting in turn Southern United Fire Ins. Co. v. Purma, 792 So.2d 1092, 1094 (Ala.2001), quoting in turn Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987)) (“ ‘ “ ‘Under the doctrine of the “law of the case,” whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.’ ” ’ ”).
Despite its conclusion that the employee could not recover additional compensation *411 on account of the injuries he received in the April 3, 2004, fall, the trial court awarded the employee additional compensation outside the schedule on the theory that the injury to the right knee extended to and interfered with the efficiency of the employee’s lower back and right shoulder as a result of the April 3, 2004, fall. The award of additional, nonscheduled benefits on account of the lower-back and right-shoulder injuries received in the April 3, 2004, fall violates the law of the case.
In Ex parte Fort James Operating Co., 905 So.2d 836 (Ala.Civ.App.2004), the worker injured his knees due to several work-related accidents. The worker subsequently fell outside the course of his employment and injured his lower back and shoulder. The worker filed a workers’ compensation claim for the knee injuries and for his lower-back injury; he later withdrew the claim for the lower-back injury. The employer filed a motion for a summary judgment arguing that the only injuries claimed by the worker were the injuries to his knees and that the worker had received all the compensation that was due him under the schedule for those injuries. The week before trial, the worker moved to continue the case and moved to amend his complaint to reinstate his lower-back-injury claim and, for the first time, to assert a claim for his shoulder injury. After the circuit court granted both motions, the employer filed a petition for a writ of mandamus, which this court granted. 905 So.2d at 837-41. This court held that the worker had no good cause to amend his complaint, which, pursuant to Rule 15, Ala. R. Civ. P., is required when an amendment is filed within 42 days of trial. 905 So.2d at 843. This court ordered the circuit court to vacate its order allowing the worker to amend his complaint. 905 So.2d at 845.
After this court issued the writ, the circuit court vacated its order. The employer then refiled its motion for a summary judgment. In opposition to the summary-judgment motion, the worker argued that even though he could not recover any compensation for the injuries to his lower back and shoulder on the basis of a separate claim, he could still present evidence of those injuries in order to prove that the effect of his knee injuries extended to other parts of his body for the purpose of taking the knee injuries outside the schedule. After the circuit court denied the employer’s motion for a summary judgment, the employer again petitioned this court for a writ of mandamus, arguing that the circuit court was not following the law of the case by allowing the worker to prove injuries for which he had no viable claim. This court granted the petition for a writ of mandamus and directed the circuit court to enter a summary judgment for the employer because the court could not consider the injuries received in the fall for which the employee had no viable claim. Ex parte Fort James Operating Co. (No. 2050166), 981 So.2d 1183 (Ala.Civ.App.2006) (table). In accordance with Ex parte Fort James, we conclude that the trial court erred in considering the injuries the employee received in the April 3, 2004, fall in determining whether the right-knee injury extended to and interfered with the efficiency of other parts of the employee’s body.
During oral argument, the employee asserted that, even if he could not recover nonscheduled benefits on account of the injuries caused by the April 3, 2004, fall, the judgment of the trial court should be affirmed because the evidence shows that his right-knee injury has altered his gait and has caused impairment to his lower back and hip independent of the April 3, 2004, fall. See Boise Cascade *412 Corp. v. Jackson, 997 So.2d at 1046, and Fort James Operating Co. v. Irby, 895 So.2d 282 (Ala.Civ.App.2004), rev’d on other grounds, Ex parte Fort James Operating Co., 895 So.2d 294 (Ala.2004), on remand, 895 So.2d 298 (Ala.Civ.App.2004), appeal after remand, 911 So.2d 727 (Ala.Civ.App.2005).
In Chadwick Timber Co. v. Philon, supra, Charles Philon, the worker, claimed that he had injured his lower back on March 8, 2001, in a work-related accident in which he fell and broke his leg. 10 So.3d at 1016. After concluding that substantial evidence did not support a finding that Philon had injured his lower back as alleged, this court stated:
“Our inquiry does not end with our holding that the evidence does not support a conclusion that Philon suffered an injury to his back on March 8, 2001. This court may affirm a correct judgment for any reason, even if the trial court did not rely on that reason in reaching its judgment. Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc., 611 So.2d 238 (Ala.1992); Cove Props., Inc. v. Walter Trent Marina, Inc., 702 So.2d 472, 474 (Ala.Civ.App.1997). Our supreme court has held that injuries to a scheduled member may be compensated outside the compensation schedule set forth in § 25-5-57(a)[, Ala.Code 1975,] when the injury ‘ “extend[s] to other parts of the body and interfere[s] with their efficiency.” ’ Ex parte Drummond Co., 837 So.2d 831, 834 (Ala.2002) (quoting Lex K. Larson, Larson’s Workers’ Compensation Law § 87.02 (2001)). Before the trial court and in his brief submitted to this court, Philon argued that changes in his gait caused by his leg injury affected his back, causing him to suffer back pain and contributing to what he claims is his permanent total disability. If properly supported by the evidence, such a claim could support the trial court’s judgment. Therefore, we next address Chadwick Timber’s argument that the evidence does not support a conclusion that any purported change in Philon’s gait resulting from his leg injury caused Philon to suffer back pain such that his injury should be deemed to be compensable outside the compensation schedule set forth in § 25-5-57(a).”
10 So.3d at 1021. This court rejected Phi-lon’s argument because he had not presented substantial evidence to support his factual theory that his back pain emanated from an altered gait caused by his work-related accident. 10 So.3d at 1021.
Philon subsequently petitioned the supreme court for certiorari review. The supreme court denied Philon’s petition without stating its reasons. Ex parte Philon, 10 So.3d 1022 (Ala.2008). In a special concurrence, Justice Murdock addressed, among other things, this court’s position that it could affirm the trial court’s judgment if the evidence supported Philon’s “change-of-gait theory.” Justice Murdock wrote:
“It is important to note, however, that, although an appellate court may affirm a judgment of a trial court on a ground not relied upon by the trial court, this is so only if the alternative ground is a ‘valid legal ground.’ Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., 881 So.2d 1013, 1020 (Ala.2003) (emphasis added) (subject to due-process constraints, appellate courts ‘will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court’); Smith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala.1988) (an appellate court ‘ “will affirm the judgment appealed from if sup *413 ported on any valid legal ground,” ’ even if that ground is not raised below (quoting Tucker v. Nichols, 431 So.2d 1263, 1265 (Ala.1983) (emphasis added))); Pavilion Dev., L.L.C. v. JBJ P’ship, 979 So.2d 24, 41-43 (Ala.2007) (Murdock, J., concurring specially). The role of an appellate court is to decide questions of law. As this Court stated in Curtis White Construction Co. v. Butts & Billingsley Constniction Co., 473 So.2d 1040, 1041 (Ala.1985):
“ ‘It is the function of a trial judge sitting as factfinder to decide facts where conflicts in the evidence exist.... The appellate courts do not sit in judgment of the facts, and review the factfinder’s determination of facts only to the extent of determining whether it is sufficiently supported by the evidence, that question being one of law.’
(Emphasis added.) See also Ex parte Golden Poultry Co., 772 So.2d 1175, 1177 (Ala.2000) (after determining that the trial court had applied the erroneous legal standard, the Court of Civil Appeals erred by weighing the evidence under the correct standard; the case should have been remanded for the trial court to make the necessary findings under the proper standard; an appellate court ‘is not authorized to independently weigh the evidence’).
“Applying the foregoing principles to the present case, I note first that the trial court made no factual finding as to whether Philon’s back injury was caused over time by changes to his gait resulting from his leg injury. Therefore, the only basis upon which the Court of Civil Appeals could have affirmed the judgment of the trial court on this alternative factual theory is if the Court of Civil Appeals could have determined, as a matter of law, that the record before it could not reasonably support any conclusion other than that Philon’s back injury occurred in the stated manner. See Gartman v. Hill, 874 So.2d 555, 559 (Ala.Civ.App.2003) (‘While it is true that this court will affirm the judgment appealed from if supported on any valid legal ground, the evidence in this case falls well short of what would be required for this court to hold, as a matter of law, that [the plaintiff] is entitled [to prevail on a factual theory as to which the trial court made no finding].’). See generally § 25-5-81(e), Ala.Code 1975; Ex parte Trinity Indus., Inc., 680 So.2d [262,] at 268-69 [ (Ala.1996) ].”
10 So.3d at 1025-26 (footnote omitted). Finding that the evidence did not indicate only one reasonable factual explanation for Philon’s back injury, Justice Murdock concluded that this court could not have affirmed the judgment based on the change-of-gait theory. 10 So.3d at 1027.
In this case, the trial court specifically found that the employee had developed “an extremely altered gait due to the weakness and buckling of his right leg.” However, the trial court did not make any finding that this altered gait caused or contributed to the development of the employee’s lower-back or hip problems. Rather, the trial court concluded that the employee injured his lower back “as a result of the [April 3, 2004,] fall.” The evidence as to the cause of the employee’s lower-back problem was conflicting; some evidence indicated that the employee’s altered gait had caused or contributed to his lower-back and hip problems. This court is not free to reweigh the conflicting evidence on that point; we must accept the trial court’s factual findings. See Ex parte Golden Poultry Co., 772 So.2d 1175, 1177 (Ala.2000). Accordingly, this court rejects the employee’s contention that the trial court’s judgment may be affirmed on the “change-of-gait theory.”
*414 The trial court made the following findings of fact relating to the pain resulting from the right-knee injury:
“11. The Court has carefully considered the pain experienced by [the employee] as a result of his right leg injury. The Court has considered the intensity of the pain, which the Court finds to average 7 out of 10 in intensity. The pain has been described as severe, throbbing, chronic, and sometimes sharp. The Court finds this is a reasonable description of his pain. This is true, even though [the employee] does not work and refrains from using the right leg to the extent he reasonably can do so. The behavioral observations made by the Court during the trial support these findings. The Court has considered the duration of the pain and finds it chronic and constant. [The employee] lies down several hours each day because of the pain. The Court observed that he ambulates slowly and in a guarded and protected fashion. The Court finds that he has poor balance and an extremely altered gait due to the weakness and buckling of his right leg. [The employee] now walks with the use of a cane. The pain has grown significantly worse with time. The severe pain experienced by [the employee] causes significant sleep disturbances for him. Additionally, [the employee] must take prescription medication for this pain, including medications for neuropathic pain.
“12. The Court finds that the pain experienced by [the employee] as a result of his right leg injury is sufficiently constant and severe, even when [the employee] refrains from using the scheduled member, that it has caused a debilitating effect on his body as a whole. This pain impairs the body as whole in a manner not contemplated by the schedule. This ongoing pain is so continuous and severe that in a real sense, the effect of this pain is extending to other parts of his body and interfering with their efficiency. It adversely affects his ability to sleep, resulting in a material deterioration in his physical health.”
The trial court further determined that, based solely on the debilitating effect of the pain from the right-knee injury, the employee was entitled to compensation outside the schedule.
The language of the trial court’s judgment tracks language used in Masterbrand Cabinets, Inc. v. Johnson, supra. In that case, Judge Murdock (then a member of this court), stated:
“We do not read Ex parte Drummond [Co., 837 So.2d 831 (Ala.2002),] as foreclosing compensation outside the schedule when an injury, although to a scheduled member, entails ‘an abnormal and unusual incapacity with respect to the member’ — in particular, a debilitating pain — that impairs the body as a whole in a manner not contemplated by the schedule....
“Although it ... restated the applicable test as whether ‘ “the effects of the loss of the member extend to other parts of the body and interfere with their efficiency,” ’ the Drummond Court did not have before it a case that required it to address an abnormal or unusual pain that, although isolated to a scheduled member, caused a more general, debilitating effect on the body as a whole. The ongoing pain experienced by the worker in Ex parte Drummond was not unusually severe; nor was it constant. Furthermore, it was pain that largely was precipitated by the worker’s use, or overuse, of the scheduled member. In such a case, the worker, by refraining from the use of that member, may largely avoid the pain in question with the *415 result being that the worker is in no worse a position due to his inability to use the affected member than if the member had been completely lost.
[[Image here]]
“Clearly, pain isolated to a scheduled member might be sufficiently constant and severe, even when the worker refrains from using the scheduled member, that it would cause a debilitating effect to the body as a whole that is greater than the disability resulting from the loss of, or the loss of use of, that scheduled member as contemplated by § 25-5-57(a)(3). The Legislature undoubtedly assumed that there could be ongoing pain associated with the loss of or a permanent injury to a scheduled member. The question becomes whether the pain associated with a lost member, or with a permanently injured member even when the worker avoids the use of that member to the extent he or she reasonably can do so, either extends to other parts of the body and interferes with their efficiency or is sufficiently abnormal in its frequency or continuity and in its severity that it has a debilitating effect on the body as a whole. We believe this understanding of the Legislature’s intent in enacting § 25 — 5—57(a) (3) is consistent with our Supreme Court’s holding in Ex parte Drummond, as well as with the repeated admonitions by our Supreme Court that the Workers’ Compensation Act is intended to serve a beneficent purpose and should be construed so as to effect that purpose. See, e.g., Ex parte Strickland, 553 So.2d 593, 595 (Ala.1989).”
984 So.2d at 1144-45 (footnotes omitted).
Johnson is a plurality opinion in which only Presiding Judge Crawley fully concurred in the main opinion. Plurality opinions have questionable precedential value at best. Ex parte Discount Foods, Inc., 789 So.2d 842, 845 (Ala.2001). See also Ex parte Achenbach, 783 So.2d 4 (Ala.2000). Our supreme court affirmed Johnson without an opinion, citing Rules 53(a)(1) and 53(a)(2)(A), Ala. R.App. P. Rule 53(a)(1) specifically states that a judgment may be affirmed without an opinion if the court determines “[t]hat an opinion in the case would serve no significant precedential purpose.” Rule 53(d), Ala. R.App. P., further provides:
“An order of affirmance issued by the Supreme Court ... by which a judgment or order is affirmed without an opinion, pursuant to subsection (a), shall have no precedential value and shall not be cited in arguments or briefs, and shall not be used by any court within this state, except for the purpose of establishing the application of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar.”
Since the issuance of Johnson, this court has cited that case on several occasions and has even analyzed subsequent cases based on its reasoning, but this court has never applied the Johnson rationale to conclude that an injury to a scheduled member could be compensated outside the schedule. See, e.g., Advantage Sales of Alabama, Inc. v. Clemons, [Ms. 2070113, Aug. 1, 2008] - So.3d - (Ala.Civ.App.2008); and Shoney’s, Inc. v. Rigsby, 971 So.2d 722 (Ala.Civ.App.2007).
Based on the posture of the Johnson case, this court asked the parties to present arguments as to whether Johnson is binding authority. Both parties agreed at oral argument that Johnson is not binding precedent. However, both parties also agreed that our supreme court has indicated that, in some circumstances, pain, though limited to a scheduled member, may be sufficient to justify an award of *416 benefits outside the schedule. Both parties point out that, in footnote 11 in Ex parte Drummond, the supreme court, after earlier holding that pain ordinarily is not a sufficient basis for awarding non-seheduled benefits, see 837 So.2d at 834 n. 5 and accompanying text, stated:
“This case does not present a situation in which the pain, although isolated to the scheduled member, causes a disability to the body as a whole. We recognize that pain can be totally, or virtually totally, debilitating, but this case does not present such a situation; therefore, we decline to address that situation here.”
837 So.2d at 836 n. 11.
We agree that this footnote reveals our supreme court’s position that pain that is totally, or virtually totally, disabling justifies an award of nonscheduled benefits even if that pain is isolated to a scheduled member. Hence, we hold, consistent with the language from footnote 11 in Ex parte Drummond, that a worker who sustains a permanent injury to a scheduled member resulting in chronic pain in the scheduled member that is so severe that it virtually totally physically disables the worker would not be limited to the benefits set out in the schedule. To the extent the plurality opinion in Johnson states some other test, we reject that opinion.
In its factual findings, the trial court focused mainly on the frequency and severity of the pain caused by the employee’s right-knee injury. The trial court noted that this pain affects the employee’s ambulation and sleep patterns, but the trial court did not make any findings regarding any other effects of the pain on the employee’s physical abilities. More specifically, the trial court did not determine whether the effects of the right-knee pain virtually totally physically disable the employee. Because the legislature has declared that it is the trial court’s duty to make the appropriate factual findings, see Ala.Code 1975, § 25-5-88, we are required to remand the case so that the trial court can make the appropriate findings rather than search the record to reach our own conclusions.
APPLICATION GRANTED; OPINION OF OCTOBER 17, 2008, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN and THOMAS,[3] JJ, concur.
BRYAN, J., concurs in part and concurs in the result, with writing.

. The record shows that on February 15, 1999, Scottsboro Aluminum, L.L.C., took over ownership of the plant formerly owned by the employer. In his amended complaint, the employee claimed that he developed dermatitis while employed by Scottsboro in 2001. Although Scottsboro never answered the amended complaint, Scottsboro did file a suggestion of bankruptcy on February 5, 2002, and notified the trial court that all actions against it had been stayed by order of the bankruptcy court. The trial court never adjudicated the dermatitis claim against Scotts-boro. That claim is not before the court on this appeal. Therefore, the facts relating to that claim will not be discussed further.

. The appeal was from a nonfinal judgment because of the pending claim against Scottsboro. See note 1, supra. However, this court reinvested the trial court with jurisdiction to enter a Rule 54(b), Ala. R. Civ. P., order certifying the judgment as final, which the trial court did on August 25, 2007.