THOMAS, Judge.
In March 2006, Pamlin Delashaw was injured in the line and scope of her employment with Stein Mart, Inc. Delashaw sued Stein Mart, seeking workers’ compensation benefits. After a trial, the trial court concluded that Delashaw had suffered a permanent partial disability to her body as a whole and an 85% loss of earning capacity as a result of her injury and awarded workers’ compensation benefits accordingly. Stein Mart appeals that judgment.
Delashaw was employed by Stein Mart as a manager of the men’s and accessories departments in one of Stein Mart’s Huntsville-area stores. On March 6, 2006, while she and some coworkers were attempting to move the base of a display, the base fell on her right foot, shattering a portion of her big toe and her second toe. Delashaw also suffered lacerations in both toenail beds. Delashaw was briefly treated in the emergency room, where her injured foot was bandaged and she was given narcotic pain medication. At the direction of her supervisor, Delashaw saw Dr. Milton Sterling, an orthopedic surgeon, the following day.
Dr. Sterling removed Delashaw’s toenail, wrapped the injured foot, and placed her foot in a boot. He also prescribed narcotic pain medication. According to Dr. Sterling’s treatment notes, Delashaw was expected to remain in the boot for five to seven weeks. Dr. Sterling’s April 2006 notes indicate that Delashaw reported improvement in her pain level. However, on May 5, 2006, according to Dr. Sterling’s notes, Delashaw reported shooting pains in her big toe and reported to Dr. Sterling that her toe was now the most painful it had been since her initial injury. Dr. Sterling indicated in his notes that he “believe[d] [that Delashaw’s injury] was starting to develop some hypersensitivity from lacerated nerves as [they] try to regenerate” and that this might resolve in days or weeks. However, Dr. Sterling’s May 15, 2006, notes reflect that, although Delashaw reported a “tremendous” decrease in the shooting pains, she continued to suffer what Dr. Sterling characterized as “discomfort.” However, on that same date, Dr. Sterling referred Delashaw to Dr. Mark Murphy for pain-management treatment.
*1103 Only Dr. Sterling’s notes are part of the record; he did not testify at trial or via deposition. Dr. Sterling’s June 14, 2006, notes indicate that he believed that Dela-shaw was trying to get back to work too quickly after her injury. His notes also reflect his opinion that Delashaw’s pain and residual swelling would likely last at least one year, or until April 2007; however, Dr. Sterling also noted that she may always have pain or nerve issues from the injury. Delashaw saw Dr. Sterling sporadically after she was referred to Dr. Murphy, most notably in April 2007 when she complained of gradually increasing pain in her right foot, which Dr. Sterling diagnosed as arthritis, and in November and December 2007, when Dr. Sterling diagnosed her with neuralgia due to nerve compression in her right foot and determined that it would slowly resolve itself. Delashaw’s November 2007 visit to Dr. Sterling was precipitated by a fall she had while getting up from a seated position on her couch; Dr. Sterling’s notes indicate that the neuralgia had resulted in “minimal mild muscle strength loss.”
In a January 27, 2009, letter to Dela-shaw’s attorney, Dr. Sterling provided a maximum-medical-improvement date of January 1, 2008, for Delashaw. He also noted that she had “ongoing muscle weakness and nerve damage.” He restricted her from standing for more than three hours.
Dr. Murphy treated Delashaw from June 2006 to the time of the March 2010 trial. He testified in his deposition, which was admitted as an exhibit at trial, that Delashaw had been consistent in her complaints that each month her pain averaged about a 5 or a 6 on a 10-point scale. A person suffering around a five- or six-point pain, said Dr. Murphy, was suffering from moderately severe pain and would need to take pain medication to alleviate some of the discomfort. He explained that Dela-shaw reported that, when she was not using pain medication, her pain was about a 7 or 8 on the 10-point scale but that use of prescribed narcotic pain medication could reduce her pain, at best, to around a 2 or 3 on the 10-point scale. Notably, Dr. Murphy testified that the narcotic pain medication that Delashaw was prescribed would not provide prolonged relief and would last for no more than three or four hours; he further explained that the medication was intended only to assist Dela-shaw in being more functional and was not intended to completely alleviate the pain from which she was suffering.
Dr. Murphy testified that Delashaw suffered from complex regional pain syndrome, which, he said, is a form of nerve damage resulting from extensive soft-tissue damage. He also noted that Dela-shaw’s pain was also related to routine degenerative joint disease resulting from her injury. Both of those causes, explained Dr. Murphy, combined to cause Delashaw to suffer pain.
Dr. Murphy also testified that, at her first appointment with him in June 2006, Delashaw told him that she had recently started suffering back pain. According to Dr. Murphy, he noted in his medical records that Delashaw was suffering from “aggravated mechanical low back pain secondary to ambulation difficulties.” He testified that he related Delashaw’s back pain to her foot injury. He explained that De-lashaw’s walking in such a manner as to protect her injured right foot would aggravate any preexisting lumbar degenerative disk disease, which Dr. Murphy appeared to assume Delashaw, like most people over 50, had started to develop.
After her injury, Delashaw did not return to work at Stein Mart. Instead, she took a similar position as a manager of the men’s department at a Dillard’s depart *1104 ment store in Decatur in July 2006, and then, for a few months, she served as a visual specialist at a Dillard’s store in Huntsville. As a visual specialist, Dela-shaw explained, she would dress mannequins, be sure the displays were properly arranged according to Dillard’s policy, and work to be sure that the entire store was pleasing to the customer’s eye. Delashaw did not enjoy the visual-specialist position and did not perform to management’s expectations, so Delashaw returned to work at the Decatur Dillard’s store as a retail-sales clerk in the men’s department. De-lashaw worked in the Decatur Dillard’s store except for the four to five months that she worked in the Huntsville store as a visual specialist.
Delashaw testified that management at Dillard’s was aware of her condition when she took the position offered her in July 2006. She said that she was permitted to take breaks and sit as needed while she was employed at Dillard’s. According to Delashaw, she was required to stand and to walk during a large portion of her workday at Dillard’s, which, she said, she was able to do only because she used narcotic pain medication. Although Delashaw had worked a 40-hour week even as recently as the 2009 Christmas season, Delashaw testified that she had requested that her hours be reduced somewhat because she could not manage to work a 40-hour week with her pain. At the time of trial, Dela-shaw said, she was working 32 to 35 hours per week.
Delashaw further explained that her pay had been reduced during the time she had worked for Dillard’s. At the time of trial, Delashaw testified, she was earning $13.50 per hour. However, she said that her pay would be reduced in April to $12.51 per hour. According to Delashaw, her pay was connected to her “sales per hour” (“SPH”) quota and that if one did not meet the SPH quota, one’s pay was reduced. Delashaw also said that, after “so many” pay cuts, Dillard’s would “let you go”; De-lashaw did not specify the number of pay cuts Dillard’s would permit.
Dr. Murphy was questioned in his deposition whether Delashaw’s work activities — walking and standing during her workday — “independently contribute^] to and aggravate^] her foot injury.” Dr. Murphy answered in the affirmative, explaining that Delashaw’s work activities would contribute to and aggravate her foot injury and the pain associated with it. He further explained that, “[i]f she has a bad foot, bad leg and she chooses to work then all of these things would work together to aggravate her complaints and necessitate her taking additional pain medications.” Dr. Murphy also explained that Delashaw’s back pain was related to the mechanical stress on her back caused by her foot injury and that walking and standing at work would cause her back pain to increase.
Our review of this case is governed by the Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975, which states, in pertinent part: “In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.” Ala. Code 1975, § 25-5-81(e)(2). Therefore, this court “will view the facts in the light most favorable to the findings of the trial court.” Whitsett v. BAMSI, Inc., 652 So.2d 287, 290 (Ala.Civ.App.1994), overruled on other grounds, Ex parte Trinity Indus., Inc., 680 So.2d 262, 269 (Ala.1996). Further, the trial court’s finding of fact is supported by substantial evidence if it is “supported by ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., *1105 680 So.2d at 269 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989), and citing § 12-21-12(d), Ala.Code 1975). Our review of legal issues is without a presumption of correctness. Ala.Code 1975, § 25-5-81(e)(1); see also Ex parte Trinity Indus., 680 So.2d at 268.
As noted above, the trial court determined that Delashaw had suffered an injury to the body as a whole and awarded permanent-partial-disability benefits based on Delashaw’s vocational disability. Stein Mart appeals, arguing first that Delashaw’s initial injury was aggravated by her work at Dillard’s, thus making Dillard’s and not Stein Mart responsible for Delashaw’s workers’ compensation benefits based on the application of the last-injurious-exposure rule. See Kohler Co. v. Miller, 921 So.2d 436 (Ala.Civ.App.2005) (applying the last-injurious-exposure rule to successive employers to determine which employer should bear responsibility for the employee’s disability). Secondly, Stein Mart argues that Delashaw suffered an injury to a scheduled member and, therefore, that the trial court erred in not confining Delashaw’s award of benefits to the amount specified in the schedule for permanent partial disability provided in Ala. Code 1975, § 25-5-57(a)(3).
We will first address whether, as Stein Mart contends, the trial court erred by determining that it and not Dillard’s is the employer responsible for the payment of workers’ compensation benefits to Dela-shaw. Stein Mart argues that the last-injurious-exposure rule applies to this case and that, based on the application of that rule, Dillard’s is the employer responsible for Delashaw’s disability.
“ ‘Under the last-injurious-exposure rule, the carrier covering the risk at the time of the most recent compensable injury bearing a causal relation to the disability bears the responsibility to make the required workers’ compensation payments. “The characterization of the second injury as a new injury, an aggravation of a prior injury, or a recurrence of an old injury determines which insurer is liable.” ’ ”
Hooker Constr., Inc. v. Walker, 825 So.2d 838, 845 (Ala.Civ.App.2001) (quoting Ex parte Pike County Comm’n, 740 So.2d 1080, 1083 (Ala.1999)) (internal citations omitted in Walker)-, see also Kohler Co., 921 So.2d at 444-45 (Ala.Civ.App.2005) (applying the last-injurious-exposure rule to successive employers as opposed to insurance carriers). Because the terms “aggravation” and “recurrence” themselves are not self-explanatory, our cases have endeavored to clarify the difference between the two.
“A court finds a recurrence when ‘the second [injury] does not contribute even slightly to the causation of the [disability].’ 4 A. Larson, The Law of Workmen’s Compensation, § 95.23 at 17-142 (1989). ‘[T]his group also includes the kind of case in which a worker has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion.’ 4 A. Larson, § 95.23 at 17-152. A court finds an ‘aggravation of an injury’ when the ‘second [injury] contributed independently to the final disability.’ 4 A. Larson, § 95.22 at 17-141.”
United States Fid. & Guar. Co. v. Stepp, 642 So.2d 712, 715 (Ala.Civ.App.1994).
As would be expected, Stein Mart makes much of Dr. Murphy’s testimony that Delashaw’s work activities at Dillard’s “independently contribute[d] to and aggravated” Delashaw’s foot and back injuries. However, a physician’s statement that an activity “aggravates” an injury or condition *1106 is not equivalent to a legal determination that a particular activity has “contributed independently to the final disability” for purposes of the last-injurious-exposure rule. As explained above, “aggravation” in the context of the last-injurious-exposure rule has a specific meaning and relates to whether the employee’s second accident or later activity independently contributed to the disability from which the employee claims to suffer.
The evidence at trial indicated that Delashaw has suffered chronic pain while standing or walking since her injury in March 2006. Delashaw has been diagnosed with complex regional pain syndrome resulting from the soft-tissue damage arising from the crush injury she received in March 2006; she has also been diagnosed with arthritis in that same foot. Dr. Murphy’s records indicate that Delashaw has consistently reported that her pain, when untreated by medication, averages around 7 or 8 on a 10-point scale. Although narcotic pain medication often reduced her pain to a two or three on the scale, nothing in the record suggests that Delashaw ever recovered from her March 2006 injury to a point at which she could function without the use of narcotic pain medication. Dr. Murphy testified clearly that the narcotic pain medication was not intended to eradicate Delashaw’s pain and that the medication would only enhance Delashaw’s ability to function.
The evidence in the present case is akin to the evidence in Kohler Co., in which the employee’s pain from her carpal tunnel syndrome was generally at a constant baseline level that increased when she went to work in a position requiring repetitive use of her hands; when the employee ceased the repetitive use of her hands, her pain subsided to the baseline level. Kohler Co., 921 So.2d at 445. The evidence in Kohler Co. did not demonstrate that the employee suffered any new injury or that she had increased her disability as a result of an aggravation of her original injuries. Id. In contrast, the evidence in Kohler Co. indicated that the employee suffered “a recurrence of the earlier symptoms of the [original] injuries.” Id. Thus, this court affirmed the trial court’s determination that the employee’s subsequent employer was not required to assume responsibility for the employee’s workers’ compensation benefits. Id.; see also Hokes Bluff Welding & Fabrication v. Cox, 33 So.3d 592, 601 (Ala.Civ.App.2008) (reversing the trial court’s determination that the employee sustained an aggravation of an earlier injury or a new injury and instead concluding that the employee suffered a recurrent lower-back injury based on evidence that the employee’s pain had increased after a second accident but that he “described the same pain-distribution pattern as before the [second] accident”).
Based on our review of the record, the trial court had before it substantial evidence indicating that Delashaw suffered from continuing pain from the date of her injury until the date of trial. Nothing in the evidence supports a conclusion that Delashaw suffered a new injury while working at Dillard’s or that she aggravated her foot injury while performing her work duties at Dillard’s. Thus, we conclude that the evidence supports the trial court’s conclusion that Delashaw’s injury was a recurrence or a continuation of her original injury and that Stein Mart is responsible for any workers’ compensation benefits due to Delashaw.
We now turn to Stein Mart’s argument that the trial court erred by determining that Delashaw was not confined to the benefits provided under the permanent-partial-disability schedule in § 25-5-57(a)(3) because the pain that she suffered *1107 as a result of her injury removed her from the purview of the schedule. As this court explained in Norandal U.S.A., Inc. v. Graben, 18 So.3d 405, 416 (Ala.Civ.App.2009) (“Graben I”), the pain exception to the schedule is a limited one, permitting an award of benefits outside the schedule only if the employee has suffered “a permanent injury to a scheduled member resulting in chronic pain in the scheduled member that is so severe that it virtually totally physically disables the worker.” This court further expounded upon the limits of the pain exception when we applied it to the facts of Graben in the opinion we issued on Norandal’s appeal after remand. Norandal U.S.A., Inc. v. Graben, [Ms. 2080679, March 12, 2010] — So.3d-,-(Ala. Civ.App.2010) (“Graben II ”).
In Graben II, this court noted that the pain exception was derived from a footnote in Ex parte Drummond Co., 837 So.2d 831, 836 n. 11 (Ala.2002). Graben II, — So.3d at - However, although the Drum-mond court indicated that pain could suffice in some situations to transform a scheduled-member injury into an injury to the body as a whole, we noted in Graben II that the Drummond court had accomplished a “reining in” of the application of the former test for compensating certain injuries outside the schedule first set out in Bell v. Driskill, 282 Ala. 640, 648, 213 So.2d 806, 811 (1968), overruled by Ex parte Drummond Co., 837 So.2d at 835. Graben II, — So.3d at-. Thus, we concluded in Graben II, the Drummond court’s pain exception would need to be construed and applied narrowly to prevent the law from returning to the very state that the Drummond court had acted to correct. Id.
With these principles in mind, this court explained:
“[I]n keeping with Ex parte Drummond and the legislative intent behind the schedule, the test is not satisfied by evidence that the worker experiences ‘abnormal,’ constant, and severe pain even when not using the affected member, see [Masterbrand Cabinets, Inc. v.] Johnson, 984 So.2d [1136,] 1144-45 [ (Ala.Civ.App.2005) ]; rather, it requires competent proof that whatever pain the worker experiences completely, or almost completely, physically debilitates the worker.”
Graben II, — So.3d at-. To make the necessary determination that the pain suffered by the employee “completely, or almost completely, physically debilitates” him or her, we said, “a trial court must consider all legal evidence bearing on the existence, duration, intensity, and disabling effect of pain in the scheduled member, including its own observations.” Id. at -. We also determined that the subjective complaints of the employee would be competent evidence of pain even without objective evidence supporting those complaints. Id. at-.
Applying the “exceedingly high standard” set out in Graben I and further explained by Graben II to the present case, Graben II, — So.3d at -, we must conclude that the trial court erred in determining that Delashaw’s pain was of such a nature as to satisfy the pain exception. Delashaw suffers from chronic pain that, if untreated by medication, is, on average, moderately severe. However, when Delashaw takes pain medication regularly, as she has done since her injury, Delashaw’s pain is reduced to, at times, as low as a 2 or 3 on the 10-point scale. Delashaw is able to work despite her pain because of the effectiveness of her pain-management treatment. None of the evidence at trial would support a conclusion that Delashaw’s pain approaches a level that “completely, or almost completely, physically debilitates” Delashaw. Graben *1108 II, — So.3d at-. Like the employee in Graben II, Delashaw “retains significant ability to perform physical activities.” Id. In fact, unlike the employee in Graben II, Delashaw continued to work at least 32 hours per week at the time of trial. Id. at -. Thus, we conclude that the trial court erred in determining that Delashaw’s pain was such that she should be compensated outside the schedule for permanent partial disability set out in § 25-5-57(a)(3). The trial court’s judgment awarding Dela-shaw workers’ compensation benefits based on her vocational disability is therefore reversed.
Delashaw also argued before the trial court and presented evidence at trial that her right-foot injury had resulted in an altered gait, which, in turn, caused Delashaw to suffer lower-back pain, which would be a separate basis for determining that Delashaw’s injury could be compensated outside the schedule. See, e.g., Boise Cascade Corp. v. Jackson, 997 So.2d 1042, 1046-47 (Ala.Civ.App.2008) (affirming an award of benefits outside the schedule on the ground that the worker’s foot injury had caused an altered gait that resulted in lower-back pain); and Chadwick Timber Co. v. Philon, 10 So.3d 1014, 1021 (Ala.Civ.App.2007) (“Before the trial court and in his brief submitted to this court, Philon argued that changes in his gait caused by his leg injury affected his back, causing him to suffer back pain and contributing to what he claims is his permanent total disability. If properly supported by the evidence, such a claim could support the trial court’s judgment.”); see also Graben II, — So.3d at-(“Alabama law has long recognized that an injury to the leg of a worker that alters the manner in which the worker walks and thereby produces pain or other symptoms in the hip or back of the worker constitutes an injury to the body as a whole.”). The trial court did not make a factual finding regarding the altered-gait theory, however, which it would be required to do under Ala.Code 1975, § 25-5-88, in order for that theory to support the trial court’s award of compensation to Delashaw. This court could affirm the trial court’s award of benefits on this alternate ground, despite the trial court’s lack of a factual finding on the issue, only in the narrow instance when we could conclude, “‘as a matter of law, that the record before [us] could not reasonably support any conclusion other than that [Delashaw’s] back injury occurred in the stated manner.’ ” Graben I, 18 So.3d at 413 (quoting Ex parte Philon, 10 So.3d 1022, 1026 (Ala. 2008) (Murdock, J., concurring specially)). We cannot conclude in this particular case that the evidence, as a matter of law, could not support any conclusion other than that Delashaw’s back pain has resulted from the change in her gait.
Thus, if we were to attempt to affirm the trial court’s award of benefits in the present case, our review would not be restricted, as it must, to issues of law. See id. at 412 (quoting Ex parte Philon, 10 So.3d at 1025 (Murdock, J., concurring specially)) (noting that an appellate court may affirm on any valid legal ground). In order to affirm the award of benefits to Delashaw, we would be required to make a factual determination as to whether the facts adduced at trial proved that Dela-shaw’s foot injury caused her to alter her gait and, in turn, caused her to suffer increased back pain. Our attempt to affirm would improperly usurp the role of the trial court by determining, in the first instance, what the facts at trial established. See id. at 413 (quoting Ex parte Philon, 10 So.3d at 1025 (Murdock, J., concurring specially)) (reiterating that it is the role of the trial court and not the appellate court to determine the facts when conflicts in the evidence exist). Ac *1109 cordingly, this court must remand the cause to the trial court for it to consider whether Delashaw is restricted to benefits provided for in the schedule for her injury or whether she might be entitled to benefits outside the schedule based on her altered-gait theory. See Ex parte Golden Poultry Co., 772 So.2d 1175, 1177 (Ala. 2000) (stating that this court “is not authorized to independently weigh the evidence” and reversing this court’s decision evaluating the evidence under the appropriate legal standard instead of remanding the cause to the trial court for it do so).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.