THOMAS, Judge.
Gold Kist, Inc. (“Gold Kist”), appeals from a judgment awarding workers’ compensation benefits to Delores Diane Smith. The Franklin Circuit Court found that Smith was permanently and totally disabled as a result of a work-related injury to her right ankle. We reverse and remand.
On November 22, 2006, Smith filed a complaint seeking workers’ compensation benefits, alleging that she had injured her right ankle in a work-related accident on December 3, 2004, and also asserting a retaliatory-discharge claim. On January 4, 2007, Gold Kist filed a motion to dismiss the complaint or in the alternative to stay the proceedings and compel arbitration. Smith filed a motion opposing Gold Kist’s motion to compel arbitration. On February 7, 2007, the trial court dismissed Smith’s retaliatory-discharge claim with prejudice. Thus, the only claim remaining was the workers’ compensation claim. On October 9, 2007, Smith filed an amended complaint alleging that she was permanently and totally disabled as a result of the December 3, 2004, injury to her ankle. Gold Kist filed an amended answer denying the material allegations of the amended complaint.
On May 10, 2011, the trial court conducted a trial at which it heard ore tenus evidence and numerous exhibits were offered into evidence. The evidence presented at trial indicated the following. The parties stipulated that Smith had fractured her right ankle in a December 3, 2004, injury that had arisen in the line and scope of her employment with Gold Kist. Smith testified that immediately following the injury she had been taken to Gold Kist’s nurse, Debbie Sharp, and that Sharp, without removing her boot or sock, had determined that Smith had pulled ligaments. She further testified that Sharp had sent her home with ice, ibuprofen, and instructions to elevate the ankle. Smith testified that the pain was so intense that she had a family member drive her to the emergency room where a medical professional confirmed that she had fractured the ankle and that the fracture required a surgical procedure. Dr. Edward Fisher performed the surgical procedure on Smith’s ankle, and he placed three screws and a plate in the ankle. Smith testified that, following the surgery, she complained to both Dr. Fisher and to Sharp that her toes, her foot, and her leg were burning and numb.
Following the surgical procedure, she testified that she returned to work at Gold Kist in the “pack out” division lining boxes. Smith testified that she continued to experience pain in her right ankle but that she continued to work. Specifically, she stated that “[she] started having shooting pains on the inside of [her] ankle, [her] toes felt like they were like flopping ... [a]nd [she] had like a blistering feel on the outside bone where the plate was.” Based on those symptoms, she continued to see Dr. Fisher regarding the December 2004 ankle injury.[1] The medical records admitted *216 into evidence indicate that Smith had complained to Dr. Fisher that she had had trouble walking in February 2006, because, she said, her ankle becomes “aggravated” with excessive walking. Dr. Fisher suggested a second surgery to remove the hardware in order to alleviate some of Smith’s pain, and, on February 24, 2006, Dr. Fisher performed a second surgery in which he removed the hardware from Smith’s right ankle.
On March 16, 2006, Dr. Fisher released Smith back to work without any restrictions. Smith testified that she was returned to work with restrictions limiting her standing and walking and that, initially, Gold Kist provided her with a stool to allow her to rest but that eventually the stool was taken away causing her to have to stand too long on her injured ankle. She testified that she had requested to be transferred to the “tenders” division because, she opined, that work would be more in line with her limitations. However, she stated that her transfer request was never approved. She continued to see Dr. Fisher as a result of the pain associated with her ankle.
Carolyn Simms, Smith’s workers’ compensation case manager, testified that in April 2006 Smith requested a panel of four physicians pursuant to § 25-5-77(a), Ala. Code 1975. Simms testified that Smith informed her that she had determined that she would prefer to remain under Dr. Fisher’s care after having been provided with the panel of four physicians. In contrast, Smith testified that she had attempted to contact a physician on the panel-of-four list but that she had not been able to attain an appointment with that physician and, thus, had continued to see Dr. Fisher.
The medical records indicate that Smith complained to Dr. Fisher that the surgical incisions were tender and that she was experiencing some cramping in her toes on May 80, 2006. The records further indicate that on May 80, 2006, Dr. Fisher placed Smith at maximum medical improvement and sent her to work without any restrictions, noting that there was only minimal tenderness around the scars and that Smith’s range of motion was normal.
The medical records indicate that on October 12, 2006, Smith informed Dr. Fisher that she was having “a lot of trouble with her back” and was complaining “more about her ankle.” Specifically, the October 12, 2006, records indicate that “[Smith] [wa]s complaining of the toes flopping again, numbness on the top of the foot and sharp pain going up the medial side of the ankle.” Smith testified that she continued to experience pain in her ankle but that several physicians refused to see her because the injury was a workers’ compensation claim. She testified that Dr. Jerry Jenkins, her primary physician, referred her to Dr. David R. Long-mire, a physician concentrating in pain management and neurophysiology, to perform testing on the ankle in 2007.
Dr. Longmire’s deposition was admitted into evidence. In his deposition, Dr. Longmire testified that he had examined Smith on two occasions — once on August 14, 2007, for an initial consultation and then again on September 5, 2007, for an EMG, a nerve-conduction study. He testified that Smith complained of tingling on the lateral side of the right foot, shooting pain near her right heel, and that she had trouble with the movement of her toes. Additionally, he testified that Smith had complained of pain with light touching of *217 the foot. After conducting the nerve-conduction study and observing Smith, Dr. Longmire opined that she suffered from allodynia, which is the sensitivity to light touch. He stated that, as a result of the allodynia, even a light touch such as a sheet could be extremely painful. He further opined that, based on his observation of her movement, she suffered from mechanical allodynia, a gait disorder, because, he said, he had observed her walking in a way so as to not promote additional pain in her ankle by readjusting her weight. However, Dr. Longmire testified that he was not able to identify just a single nerve injury but that Smith’s pain symptoms related to other tissues. He further opined that one of Smith’s joints in her right foot was not functioning properly, which was causing the pain and abnormal sensations. He testified that, based on his limited testing, he could not determine whether Smith’s abnormality was a result of problems with her back or her right ankle or a combination of problems with her back and her ankle. He further testified that Smith had failed to make any further appointments following the September 5, 2007, appointment.
Smith testified that she had been unable to continue seeing Dr. Longmire due to financial limitations. She testified that she had begun using a walking cane after her examination by Dr. Longmire. She also testified that the pain interfered with her ability to sleep, clean her home, visit with her grandchildren, and maintain employment. Specifically, she testified that she had left her employment with Gold Kist on May 17, 2006, and had begun working for DSI Securities at Wayne Farms in Decatur as a security guard. She testified that she had liked her job there because she could sit and stand in the guard shack as needed but that she had had to leave her employment at DSI Securities because she had been unable to perform the amount of walking required to do “rounds” because, she said, she would have severe pain in her toes and ankle. Smith testified that she then worked at the Wal-Mart distribution center located in Russellville as a shelf-stocker. She stated that she could not perform the duties required of a shelf-stocker because, she said, her right ankle was not strong enough to allow her to move a pallet loaded with groceries by herself. She then worked for the Phil Campbell Armstrong Pie Factory as a dishwasher and then a pie packer. She testified that she could not pack the pies quickly enough because her injury required her to take breaks and sit down to rest. Smith testified that she had last worked at Sara Lee as a sandwich maker but that she had been terminated from her employment there for failure to reveal the work-related injury to her ankle. She testified that Sara Lee became informed of her previous work-related injury because, she said, she had been experiencing pain in her back, leg, and ankle and had reported the pain to the Sara Lee nurse. She also testified that she had been to the emergency room on two occasions as a result of the pain. Smith testified that she had suffered from a degenerative disease in her back but that her back pain had intensified since she had injured her right ankle.
Smith testified that her pain was severe and that she had not sought any further employment after her experience at Sara Lee. She testified that her pain interferes with her everyday activities because, she said, her foot feels heavy and constantly throbs. Smith testified that she takes Ef-fexor, a muscle relaxer that starts with the letter “M,” and over-the-counter Motrin for the pain. She testified that she needed to get a new prescription for Ultram, a pain reliever, because she had run out. She further testified that she has a strong pain tolerance and that she does not take *218 pain medication until it gets “too bad.” She further clarified that she takes the medications only “occasionally” as needed.
On July 12, 2011, the trial court entered a judgment finding Smith totally and permanently disabled, awarding workers’ compensation benefits, and awarding attorney fees. On August 8, 2011, Gold Kist filed a motion to alter, amend, or vacate the trial court’s judgment, arguing that the trial court had erred in awarding Smith compensation outside the schedule provided in § 25 — 5—57(a)(3), Ala.Code 1975 (“the schedule”), based on the evidence presented at trial. On October 19, 2011, Gold Kist filed a motion to stay the execution of the judgment, which the trial court granted. Gold Kist’s postjudgment motion was denied by operation of law, pursuant to Rule 59.1, Ala. R. Civ. P. Gold Kist filed a timely notice of appeal to this court on December 12, 2011.
Gold Kist raises one issue on appeal: whether the trial court erred in finding Smith permanently and totally disabled as a result of the injury to her ankle and awarding benefits outside the schedule.
“The standard of appellate review in workers’ compensation cases is governed by § 25-5-81(e), Ala.Code 1975, which provides, in part, that, ‘[i]n reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.’ § 25 — 5—81 (e)(2). ‘Substantial evidence’ is “‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” ’ Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996) (quoting West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala.1989)).”
G.UB.MK Constructors v. Davis, 78 So.3d 998, 1002 (Ala.Civ.App.2011).
On appeal, Gold Kist contends that the trial court erred in finding Smith permanently and totally disabled and awarding her benefits outside the schedule because, it says, Smith suffered an injury to her ankle, a scheduled member, and that the evidence presented was insufficient to support any award of benefits outside the schedule based on the “pain exception.” In support of its argument, Gold Kist cites numerous authorities, including Bell v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968), Ex parte Drummond Co., 837 So.2d 831 (Ala.2002), and Ex parte Hayes, 70 So.3d 1211 (Ala.2011).
The trial court’s judgment found that Smith had “suffered a one hundred percent total disability” due to the injury to her ankle. The judgment stated, in pertinent part:
“6. Testimony indicated that [Smith] fractured her ankle. Despite two surgeries, [Smith] experiences severe pain. [Smith] is unable to stand for periods of time that would be required for future employment. [Smith] walks with the aid of a cane and is unable to perform simple tasks because of the injury. The Court finds [Smith] to be a credible witness and the medical records support her testimony.
“7. The Court finds that [Smith’s] present condition was caused by the accident which occurred within the line and scope of her employment with [Gold Kist] on December 3, 2004. The Court further finds that the injuries received by [Smith] while so employed with Gold Kist have permanently and totally incapacitated her and have prevented her from working and being returned to any gainful employment.”
Thus, the trial court concluded that the injury to Smith’s ankle, a scheduled mem *219 ber,[2] could be compensated outside the schedule based on its finding that Smith suffers from “severe pain” due to the ankle injury.
In Norandal U.S.A., Inc. v. Graben, 18 So.3d 405 (Ala.Civ.App.2009), this court adopted a “pain exception” to allow an employee compensation outside the schedule for an injury to a scheduled member based on the supreme court’s language in Ex parte Drummond Co., 837 So.2d at 836 n. 11.[3] Specifically, in Graben, this court stated that
“footnote [11] reveals our supreme court’s position that pain that is totally, or virtually totally, disabling justifies an award of nonscheduled benefits even if that pain is isolated to a scheduled member. Hence, we hold, consistent with the language from footnote 11 in Ex parte Drummond, that a worker who sustains a permanent injury to a scheduled member resulting in chronic pain in the scheduled member that is so severe that it virtually totally physically disables the worker would not be limited to the benefits set out in the schedule.”
18 So.3d at 416. Thus, an injury to a scheduled member, such as an ankle, can be compensated outside the schedule if the pain from the injury “virtually totally physically disable[s]” the employee. Id.
Moreover, in Goodyear Tire & Rubber Co. v. Haygood, 93 So.3d 132, 142 (Ala.Civ.App.2012), we stated that
“[t]his court has held that ‘for pain in a scheduled member to be totally, or virtually totally, debilitating to the body as a whole, that pain must be such that it completely, or almost completely, prevents the worker from engaging in physical activities with the uninjured parts of his or her body.’ G.UB.MK Constructors v. Davis, 78 So.3d 998, 1002 (Ala.Civ.App.2011) (citing Norandal U.S.A., Inc. v. Graben, [Ms. 2080679, March 12, 2010] — So.3d - (Ala.Civ.App.2010)).”
Therefore, in order for an injury to a scheduled member to be compensated outside the schedule based on pain alone, the employee must present sufficient evidence to meet the “exceedingly high standard” required by the cases illustrating the “pain exception.” Norandal U.S.A., Inc. v. Graben, [Ms. 2080679, March 12, 2010] — So.3d -, -(Ala.Civ.App.2010).
In this case, Smith testified that she had trouble performing everyday activities, such as cleaning, sleeping, working, and visiting with her grandchildren because of her pain. She also testified that she had had four jobs after leaving Gold Kist but that she had not been able to complete the tasks required by each job because she could not walk or stand without needing periods of rest due to the weakness and pain associated with her ankle injury. Additionally, the medical records indicate that Smith experienced discomfort and pain as a result of her ankle injury, and Dr. Longmire’s deposition testimony also indicates that Smith had suffered nerve damage as a result of her injury. Howev *220 er, the medical records and Dr. Long-mire’s deposition testimony also note that Smith suffered from pain in her back as a result of a degenerative disk disease unrelated to the ankle injury.
Smith testified that she has a high pain tolerance and that she takes her pain medications only “occasionally” as needed. She further testified that she has the ability to walk and perform everyday activities with the use of a cane and occasional breaks to sit as needed. Additionally, the record does not indicate that Smith has any limitations regarding the use of her upper extremities. Therefore, despite the pain in her right ankle, the record indicates that Smith retains significant ability to perform physical activities.
Based on our review of the record, we cannot conclude that substantial evidence supports the trial court’s finding that Smith was permanently and totally disabled as a result of the injury to her ankle. Thus, we hold that the trial court erred in awarding Smith benefits outside the schedule for the injury to her right ankle. Accordingly, we reverse the judgment of the trial court, and we remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.

. The record also indicates that Smith sought a second opinion from Dr. John T. Murphy in November 2005. The record contains a letter from Dr. Murphy noting that Smith's only *216 complaints were of "mild discomfort and pain." He noted that there was no swelling, that the wound appeared to be "nicely healed,” and that the X-rays showed that the fracture was “reduced perfecdy.”

. An injury to an employee’s anide is considered an injury to a scheduled member. See Denmark v. Industrial Mfg. Specialists, Inc., 98 So.3d 541, 543 (Ala.Civ.App.2012); and Caseco, LLC v. Dingman, 65 So.3d 909, 923 (Ala.Civ.App.2010).

. Footnote 11 stated:
“This case does not present a situation in which the pain, although isolated to the scheduled member, causes a disability to the body as a whole. We recognize that pain can be totally, or virtually totally, debilitating, but this case does not present such a situation; therefore, we decline to address that situation here.”
Ex parte Drummond Co., 837 So.2d at 836 n. 11.